632            Anderson *v.* Snyder.          [Sup. Ct.

# WHEELING.

## Anderson *v.* Snyder.

Submitted January 18, 1883—Decided April 28, 1883.

(*Snyder, Judge, Absent.)

1. A court of equity will not decree a cancellation of a contract for the sale of land between vendor and vendee, in the absence of mistake, accident or fraud, where the contract is not illegal or contrary to public policy, merely on the ground of deficiency in the quantity of land sold, where compensation for such deficiency, can be made to such vendee. (p. 642.)

2. Where a vendee has conveyed to the vendor certain lands, in exchange for other lands sold to such vendee and the vendor has conveyed the lands so conveyed to him, to a third party, and he is unable to reconvey said lands to such vendee, it is error in the court to decree a cancellation of said deed, in a suit brought by said vendee against said vendor and his alienees of said land, upon the consent of said vendor, even where his said alienees fail to appear, in the circuit court or in this Court to resist the same. (p. 640.)

3. If it appear to this Court that such decree of cancellation so entered by the consent of such vendor, will be detrimental to the interests of any of the defendants, it will, in accordance with its ninth rule of practice "consider the whole record as before it and will review the proceedings in whole or in part, in the same manner, as it would do, were such appellee to bring the same before it by appeal, unless such error shall be waived by such appellee." (p. 641.)

4. If the vendor by his written contract agrees to convey for a specified price, a tract of land described by metes and bounds or otherwise, with the words added, containing a specified number of acres, or that number of acres "more or less," this on the the face of such contract is a contract not by the acre, but in gross and without any implied warranty of the quantity, and not being ambiguous cannot be explained, modified or altered by any kind of parol testimony. And in such a case, if there was no fraud in either party, a court of equity will allow no abatement or compensation on account of a deficiency in the quantity of said land. (p. 647.)

5. Although the sale be in gross, and not by the acre, if the vendor, to induce the vendee to purchase, falsely represents to him that

*Counsel below.

the land contains a specified number of acres, or that number "more or less," and the vendee relying on the truth of such representation, is thereby induced to purchase the same as containing about that number of acres, at a price he would not otherwise have given for it, such representation even if innocently made, may amount to an implied warranty of the number of acres, and the vendor may be compelled to account to the vendee for a deficiency in the number of acres. (p. 648.)

6. If such false representations of such vendor be unqualified, as made upon his personal knowledge, and the vendee believe and rely on them as true, which he has a right to do, it ought *prima facie* to be regarded, that the vendee was induced to pay, or to agree to pay the price named in the contract because of the statement contained in it of the number of acres in the tract of land sold, and the vendor must in the absence of all proof, be regarded as guilty of a fraud upon the vendee, and for this reason a court of equity will require the vendor to make to the vendee an abatement from his purchase-money if not paid, or if paid, compensation for such deficiency. (p. 654.)

7. The measure of such compensation or abatement is the contract price by the acre, of the land sold, if the same can be ascertained, and if not ascertainable, then the average value by the acre of the land sold, must be taken as the measure of such compensation or abatement. (p. 654.)

8. Sections 22 and 23 of chapter 130 of the Code of West Virginia made no material change in the common law rule of evidence as to husband and wife giving evidence, for or against each other, in a cause in which they are parties, except in an action or suit between husband and wife. *Rose & Co.* v. *Brown*, 10 W. Va. 122 and *Hill et ux.* v. *Proctor*, 11 W. Va. 59. (p. 644.)

9. In the fifth exception to section 23 of chapter 130 of the Code of West Virginia, the words in "*an action or suit between husband and wife,*" are to be construed as synonymous with the words, "a *controversy* between husband and wife," and therefore neither the husband or wife was a competent witness for or against each other in a controversy between them, and a *third* party in any action, suit or other proceeding, although they may severally stand therein, as plaintiff and defendant. (p.645.)

10. A case in which the decrees of the circuit court appealed from, are reversed, and the appellant decreed to pay the costs of the appeal to an appellee, as the party substantially prevailing in the appellate court.

Appeal from and *supersedeas* to two decrees of the circuit court of the county of Greenbrier, rendered respectively on the 12th day of June, 1880, and on the 11th day of Novem-

ber, 1880, in a cause in said court then pending wherein Jennie Anderson was plaintiff, and William R. Snyder was defendant, allowed upon the petition of said Snyder.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decrees appealed from.

WOODS, JUDGE, furnishes the following statement of the case :

In 1878 Jennie Anderson, the wife of Charles S. Anderson, filed her bill in the circuit court of Greenbrier county against her said husband, William R. Snyder, Rebecca A. Hunter and Fanny Hunter, alleging that on the 29th of June, 1875, her husband owned an undivided half of a tract of two hundred and eighteen acres of land, and that she owned one hundred and sixty acres of land worth at least forty-five dollars per acre, as her separate estate, and that all of said lands lie in Greenbrier county in this State ; that said William R. Snyder on that day claimed to be the owner of two tracts of land in Roanoke county, Virginia, one of which was known as the "Margaret Johnson tract," which he represented to contain ninety acres, and to be worth sixty dollars per acre, and the other known as the "woodland tract," which he represented to contain six hundred acres and to be worth two dollars per acre ; that said Snyder desiring to obtain her said one hundred and sixty acres of land, fraudulently and collusively combined with her said husband to deceive and mislead her in relation to the quantity, quality and value of said Roanoke lands, which she had never seen, and of which she had no personal knowledge ; that said Snyder deceitfully, willfully and fraudulently misrepresented to her that the said "Margaret Johnson tract," contained *ninety* acres and was worth sixty dollars per acre ; that the "woodland" contained six hundred acres and was worth two dollars per acre, that believing these representations to be true, and relying exclusively upon these representations as to the character, location, quantity and value of said lands made to her by said Snyder and her said husband, whom he had paid to aid in misleading and deceiving her, she was induced to enter into an agreement with the said Snyder on

the said 29th of June, 1875, whereby he bound himself to convey to her "*with deed of general warranty free from encumbrance*" said two parcels of land in Roanoke county, one containing *ninety* acres, and the other *six hundred* acres and to pay to her eight hundred dollars, in three installments, the last of which became due on the 1st of October, 1877, and all to bear interest from the 1st of October, 1875; that she and her said husband by deed dated the 29th of June, 1875, conveyed with covenants of general warranty to the said Snyder, her said one hundred and sixty acres, and her husband's said moiety of said two hundred and eighteen acres, "in consideration of certain lands and money, particularly set forth and described in said written agreement" with said Snyder; that in said deed a vendor's lien was retained on both of said tracts of land for the performance of said written agreement. Said bill further alleges that the said Snyder sold to her both of his said tracts of land by the acre; that she agreed to take, and did take the said "Margaret Johnson tract" at sixty dollars and the "woodland" at two dollars per acre; that since her purchase she has had the said lands surveyed, and has ascertained that said "Johnson tract" contains only eighty-two acres, and the "woodland" only five hundred and sixty-five acres; that the said "Johnson" land was not worth thirty dollars and the "woodland" not more than one dollar per acre; that no part of said eight hundred dollars has been paid to her, but Snyder claims he has paid the same to her husband, who she avers had no authority to receive the same; that her said one hundred and sixty acres on the 29th of June, 1875, was worth seven thousand two hundred dollars, while said Roanoke lands on that day, were not worth more than three thousand five hundred dollars, and that instead of eight hundred dollars she ought to have received three thousand seven hundred dollars as the difference in the value of said lands. Said bill further alleges that said Snyder on the 27th of July, 1875, by deed of that date conveyed the said one hundred and sixty acres, and said moiety of said two hundred and eighteen acres to the said Rebecca A. Hunter and Fanny Hunter, and thereupon prays, that the contract and deed of the 29th of June, 1875, between herself and husband and

said Snyder, may be canceled and annulled; that said Snyder be compelled to pay her the real difference in value between her one hundred and sixty acres, and the Roanoke lands; that she have compensation for the deficiency in the number of acres in said two tracts at the contract price; that she may have a decree for said eight hundred dollars, with its interest, that said lands conveyed to Snyder may may be sold to satisfy her demands, and in case that said deed and contract can not be canceled, that said Snyder be compelled to convey to her said Roanoke lands by deed with covenants of general warranty free from encumbrances, and for general relief.

The defendants, Rebecca A. and Fanny Hunter and C. S. Anderson, never appeared in said cause, and the bill as to them was taken for confessed. The defendant Snyder answered the bill, to which answer the plaintiff replied generally. The answer admits the exchange of said lands, and the execution of the deed and contract of the 29th June, 1875; it alleges that Snyder has paid all the said eight hundred dollars; that a large part of it was paid to discharge liens existing on said one hundred and sixty acre tract, and on notes executed by said plaintiff, and the balance upon debts due from C. S. Anderson at his request, which were afterwards ratified by her. Said answer denies the said fraud, misrepresentation and deceit alleged in the bill; the said defendant denies that he represented said Johnson tract to contain ninety acres, or the "woodland" to contain six hundred acres. He avers that he refused to warrant the quantity of land in either of said tracts; that he made the contract with said C. S. Anderson, as the agent of the plaintiff, and that he knew more about the quantity and quality of the lands than defendant did, he having lived near them, and had had the "Johnson land" rented at one time; says he told said C. S. Anderson that his title papers called for eighty acres, though he believed it would run out eighty or ninety-five acres, and that at his request defendant inserted in the said written contract *"ninety acres more or less,"* that the words "more or less" were inserted in said contract for the express purpose of excluding any warranty of quantity, and that this was fully *understood* and *agreed* to by said *C. S. Anderson* at the time; that he told

him he did not know the number of acres in the "woodland;" that he had bought five hundred and thirty-six acres of it from Burwell, and that there was an unknown quantity of his home place, of twenty-five to fifty acres, and it was put in the contract, of six hundred acres "more or less," without any other representation of the quantity, and with the distinct agreement that it was a sale in gross and not by the acre; he denies that the "Johnson tract" was exchanged at sixty dollars, and the "woodland" at two dollars per acre, but avers that both tracts were estimated and exchanged in gross, whether the quantity was more or less; he denies that he fraudulently colluded with plaintiff's said husband; and also that the terms of the exchange were discussed with plaintiff or in her hearing—further than to announce to her the conclusion, which she agreed to, upon condition that defendant would make her a present of a horse worth one hundred and fifty dollars—which defendant agreed to. He admits that he was not then prepared to convey said land, but avers he would be able to do so on the 1st November, 1878, when he would do so, and says that a vendor's lien was retained by the plaintiff on the lands conveyed to defendant as appears by her deed of 29th June, 1875. Said deed and written agreement are filed with said bill as exhibits, and are made part of it.

On the 14th of June, 1879, the cause was heard upon the bill taken for confessed as before stated, and upon the answer of Snyder, exhibts and depositions and referred to Commissioner John A. Preston, to state and report:

"1st. What deficiency, if any, there is in the 'Margaret Johnson' tract of land and its value per acre on the 29th of June, 1875.

"2d. What deficiency, if any, in the 'woodland' tract, and its value per acre on the 29th day of June, 1875.

"3d. What was the value per acre of the Jennie Anderson tract of land on the 29th day of June, 1875.

"4th. What was the value per acre of the C. S. Anderson tract of mountain land on the 29th day of June, 1875.

"5th. What was the true difference in value between the first two tracts and the last two, on the said 29th day of June, 1875.

"6th. What credits, if any, defendant, Wm. R. Snyder,

is entitled to, against his obligation to the plaintiff for eight hundred dollars, as per contract dated June 29, 1875.

"7th. Any other matter deemed pertinent or required by any party."

The plaintiff took the depositions of thirty witnesses including those of herself and husband; and the defendant, Snyder, took his own deposition and those of twelve other witnesses. The greater portion of this testimony was taken to show the values of said several tracts of land at the date of said exchange, and the deficiency in the number of acres in the Roanoke lands. Said commissioner reported that the Johnson tract contained eighty-one and one half acres, leaving a deficiency of eight and one half acres, and that said land of the date of said exchange was worth forty dollars per acre; that the "woodland" contained five hundred and seventy-four and one half acres, leaving a deficiency of twenty-five and one half acres, and that said land at said exchange was worth fifty cents per acre; that at the same date the one hundred and sixty acre tract was worth forty-five dollars per acre, and the moiety of the two hundred and eighteen acres was worth two dollars and seventy-five cents per acre; that said deficiency at the values ascertained by him, amounted to three hundred and fifty-two · dollars and seventy-five cents, and at the prices alleged by said plaintiff, to five hundred and sixty-one dollars. He returned in his report three statements of the account between said plaintiff and said Snyder, numbered respectively 1, 2 and 3. The plaintiff excepted to statements 2 and 3 and also to so much of said report as fixed the value of said deficiency at forty dollars per acre for said Johnson tract, and fifty cents per acre for the "woodland," instead of sixty dollars per acre for the former, and two dollars per acre for the latter. Said defendants filed no exceptions to said report.

On the 10th day of June, 1880, the defendant Wm. R. Snyder executed and filed in said cause a paper writing in these words:

"Consent for rescission by W. R. Snyder:

Jennie Anderson  
    *vs.*  
William R. Snyder *& als.* }

"The defendant, William R. Snyder, hereby consents that

inasmuch as the plaintiff charges in her bill that in the exchange of lands made and mentioned in her bill she was overreached and defrauded, this charge he pronounces untrue, and to show his confidence in the fairness and justice of said exchange, he here offers and consents that the prayer of the plaintiff's bill asking for a rescission of said sale may be granted her by the court, and that the parties thereto be restored to their rights as they were before said contract and sale were entered into, which he avers can be done.

"WM. R. SNYDER."

"*June* 10, 1880.

On the 12th of June, 1880, the court entered in said cause the following decree:

"This cause came on this day to be again heard upon the papers formerly read, the answer of Wm. R. Snyder, general replication to said answer, the report of Commissioner John A. Preston made pursuant to a former decree in this cause, with exceptions endorsed on said report, the exhibits filed, depositions of witnesses, the written consent of said W. R. Snyder to a cancellation and rescission of the contract made between him and the said Jennie Anderson according to the prayer of her bill, and was argued by counsel. Upon consideration whereof, it is adjudged, ordered and decreed that the said contract between the said Jennie Anderson and Wm. R. Snyder, and the said deed made by the said Jennie Anderson and her husband, C. S. Anderson, to the said Wm. R. Snyder, both dated the 29th day of June, 1875, be canceled and rescinded, and that the said Wm. R. Snyder reconvey unto the said Jennie Anderson the one hundred and sixty acres in said deed mentioned, and to the said C. S. Anderson the one half of the two hundred and eighteen acres in the proceedings and said deed of the 29th day of June, 1875, mentioned and described, and that said Snyder shall procure his wife's signature and acknowledgment to such deeds of reconveyance, and that the said parties remain in possession as they now are until the report hereinafter directed is taken and confirmed by the court; and it is further adjudged, ordered and decreed that this cause be referred to John A. Preston, a commissioner of this court, who shall take an account between the said Jennie Anderson and the said Wm.

R. Snyder, showing the full amount of the debts and credits due from one and to the other, also an account to show what is necessary to put the parties in *statu quo*, and whether or not the same can now be done, and report to this court at its next term, but before proceeding to take such account said commissioner shall give notice of the time and place to the said parties, or their attorneys, and it is further ordered that Jennie Anderson recover her costs in this suit expended."

The account directed by said decree, with a large mass of testimony was taken on the points submitted, covering eighty pages of the printed record in this cause, and reported to the court at the November term, 1880. This report in substance adopted statement "1" of former report, as showing the state of the account between Snyder and plaintiff, which on that point was not excepted to by any of the parties, although both plaintiff and said Snyder excepted to it on other grounds, which from the view we take of the case, are unnecessary to  be stated. On the coming in of this report, the court on the 11th day of November, 1880, entered a decree, settling the principles in the cause, from which the defendant, Wm. R. Snyder, obtained an appeal and *supersedeas* to this Court.

*A. F. Mathews* for appellant.

*Davis & Rucker* for appellee cited 78 Ill. 412; 71 Ill. 475; Code, ch. 130; 1 W. Va. 216; 2 Tuck. Com. (3d Ed.) 44; and Bas. Abr. " Attorney " H.

WOODS. JUDGE, announced the opinion of the Court:

The first reflection that occurs in the consideration of the questions arising out of this case is, that the circuit court committed no error to the prejudice of the appellant by its decree founded upon his consent to the cancellation of said deed from plaintiff and her husband to the defendant, Snyder, for the said Greenbrier lands, and of said agreement to convey to said plaintiff said Roanoke lands; the second reflection is, that such a cancellation by consent of said Snyder and the plaintiff, and without any proofs to authorize the same, *might*, and for aught that appears, probably would do irreparable injury to the defendants, Rebecca A. and Fanny

Hunter, to whom the said Snyder had conveyed said Green-
brier lands on the 27th July, 1875.    It is true they have never
appeared in the court below nor made defense to the plain-
tiff's bill; nor have they appeared, or in any manner com-
plained in this Court, of the proceedings of the said circuit
court.    It may be that they are under the impression that
their said vendor, Snyder, is defending their interests in the
controversy; it may be, that as the said bill wholly fails to
allege against them any facts, which if proved, would author-
ize the court to deprive them of their title to said lands, they
are resting in false security, under the assurances of said
Snyder, that they will be fully indemnified against any loss
arising from the cancellation of said agreement and deed of
29th June, 1875.    Having no means of determining whether
the interests of these persons, who, according to the pleadings
in this case, must be held to be innocent purchasers, are se-
cured or not; and perceiving that they may be greatly injured,
this Court will, in the case provided for in its ninth rule of
practice, " consider the whole record as before it, and will
reverse the proceedings in whole or in part in the same man-
ner as it would do, were the appellee or defendant, to bring
the same before it, either by appeal, writ of error or *superse-
deas*, unless such error be waived," &c.    Acting under the
spirit of this rule, we will consider this case as if each of the
defendants, Rebecca A. and Fanny Hunter, and Charles S.
Anderson, had appealed from the said decree rendered in
said cause on the 11th November, 1880.

From an examination of the plaintiff's bill itself, it will be
manifest that she places but little reliance on the grounds
alleged for a rescission and cancellation of her said deed and
contract, to, and with the defendant Snyder.    It is not pre-
tended in the bill that there was any mistake in reducing
said contract to writing, whereby the real intention of the
parties was defeated, nor that the whole, or a material part of
the consideration thereof had failed, or that the contract was
procured to be executed by the fraud of the defendant Sny-
der, or that any specific wrongful act was done by him to in-
duce her to enter into said agreement, except that the parcels
were sold by the acre, and that the "Johnson tract" was rep-
resented to contain ninety acres, and the "woodland" six

81

hundred acres, and that the former is deficient eight, and the latter thirty-five acres. It is not pretended that the contract was illegal or against public morals or public policy. It is true she alleges in general terms that said Snyder and her husband "fraudulently and collusively combined in procuring her agreement to trade said lands," and that "she has been informed and believes that said Snyder paid her husband to aid him in misleading and deceiving her as to the value of said lands," but no specific acts done, or statements made on this subject are set forth. It would seem that the representations made by Snyder as to the value of said lands are nothing more than such expressions of opinion, in regard to the value of said lands, as are usually made by vendors, and for that reason very little relied upon by the purchasers. No other fraud, actual or constructive is alleged. The contract was neither illegal nor contrary to good morals, or public policy; nor has any material part of the consideration failed, nor was there any mistake in the execution of the contract. These are the grounds on which courts of equity grant relief by rescinding and canceling agreements, and deeds which would otherwise be held valid. Story Eq. Juris. sections 161, 439, 695.

The testimony taken in this case which was before the court when it rendered the decree on the 12th of June, 1880, canceling said agreement and deed dated the 29th of June, 1875, between the plaintiff and the said Snyder was wholly insufficient to warrant or sustain such a decree, and we are satisfied, that but for said written consent of the said Snyder, and the apparent indifference of the other defendants, no such decree would have been rendered. While the said decree of the 12th of June, 1880, contains no error of which the appellant has a right to complain, and if he alone was interested therein, it would not be reversed, yet because the same is erroneous, as to the said Rebecca A. Hunter and Fanny Hunter, and is, or may be, greatly to their prejudice, we are of opinion that the same must be wholly reversed, which leaves the case before us, precisely in the same condition in which it stood on the 12th of June, 1880, when the cause came on to be heard by the said circuit court.

The plaintiff in support of her pretensions, examined as a

witness in her behalf, her said husband Charles S. Anderson, whose testimony was excepted to by said Snyder, on the ground that he was incompetent to testify on behalf of the plaintiff, who was his wife.

The general rule of the common law is, that a party to the record cannot be a witness either for himself, or for a co-suitor in the cause. This rule is founded not solely in the consideration of interest, but also in the expediency of avoiding temptations to commit perjury. 1 Greenl. Ev. § 329. This rule applies to husband and wife, neither of them being admissible as a witness in a cause civil, or criminal, in which the other is a party, nor in any cause in which the *interest* of the other is involved. But this exclusion is founded partly on the identity of their legal rights and interests at common law, and partly on principles of public policy, which lie at the basis of civil society; and this principle of public policy continues the exclusion of their testimony for or against each other, even after all identity of their legal rights and interests have ceased to exist. *Ib.* §§ 334, 335, 337.

By section 22 of chapter 130 of the Code no witness in any civil action, suit or proceeding can be excluded by reason of his interest in the event, thereof.

If the testimony of a husband or wife, who was not a party to a suit, offered in behalf of the other, who was such party, had been excluded only because of the interest of such witness in the event of the suit, this section would have rendered such husband or wife a competent witness for or against each other; but as they were also excluded on principles of public policy, and as such exclusion remained unaffected by said section they continue to be incompetent as witnesses for or against each other, excepting only in the case provided for in the fifth exception to the twenty-third section of said chapter. By the said twenty-third section the common law rule which excluded all parties to the record as witnesses for or against each other, was so modified as to render all parties to any civil action, suit or proceedings competent witnesses for or against each other in the same manner and subject to the same rules of examination as other witnesses, with certain specified exceptions, the only one of which necessary to be considered here, is the fifth, which is in these words: "A hus-

band shall not be examined, for or against his wife, nor a wife for or against her husband except in an action or suit between husband and wife."

The construction of said sections 22 and 23 of chapter 130 of the Code of West Virginia was considered by this Court in the the cases of *Hill et ux.* v. *Proctor* and of *Proctor* v. *Hill et ux.*, reported in 10 W. Va. 59. It will be observed that Hill and wife, in both cases were parties on the *same* side, and that the suits were in fact, in relation to a controversy between Proctor and them, and was not in any sense a controversy between said Hill and his wife. The deposition of Hill was taken in the progress of the cause in regard to the boundary of a tract of land in which he and his wife were equally interested; this deposition was excepted to, on the grounds that he was incompetent to testify to any matter affecting his wife's interest in the subject-matter of said suit. Upon an appeal to this Court he was held to be an incompetent witness, and this Court held that said sections 22 and 23 of chapter 130 " made no material change in the common law as to husband and wife giving evidence for or against each other in a cause in which they are parties, *except in an action or suit between husband and wife.* In such case the fifth exception to section 23, so modifies the common law as to allow husband and wife to be witnesses for and against each other in suits between themselves."

This question was again before this Court in the case of *Rose & Co.* v. *Brown et ux.* reported in 11 W. Va. 122. In this case Brown and wife, were both parties defendant; the controversy was not between said Brown and his wife, but between them and the plaintiffs, who were seeking to set aside a deed made to the said wife. Brown's deposition having been taken on behalf of his wife, and not excepted to, was read on the final hearing of the cause in the court below. But this Court upon an appeal held, that said Brown was incompetent to testify on behalf of his wife, and permitted the objection to be made for the first time to the reading thereof in this Court, and re-affirmed the doctrine laid down, upon that subject, in *Proctor* v. *Hill et ux., supra.*

In the case at bar, the wife is plaintiff, and her husband, C. S. Anderson, Wm. R. Snyder and others are defendants.

While the bill contains some vague charges of fraud against
her husband, in connection with the defendant, Snyder, to
which he makes no defense, which are wholly unsupported
by the evidence it is manifest, that there is not only no con-
troversy between the plaintiff and her husband, in regard to
the subject matter of this suit—but that they are perfectly in
accord with each other; and that the only controversy in this
suit, is between the plaintiff and her husband on one side,
and the defendant, Wm. R. Snyder, on the other.    While
we hold, that sections 22 and 23 of chapter 130 of the Code
do not materially change the common law as to husband
and wife giving testimony for or against each other in a
cause in which they are parties, except in an action or suit
between themselves; and that said fifth exception to section
23 only modifies the common law rule of evidence, so far as
to allow the husband and wife to be witnesses for and against
each other in suits between themselves, yet we hold, that the
words " action, suit or other proceeding," as used in the first
clause, and the words " action or suit" as used in said fifth
exception, are to be taken and held as synonymous with
" *controversy*," and not merely as designating the particular
mode in which the controversy may be presented to the
court by " action" (at law), " suit" (in equity), or " other
proceeding;" and that this " controversy" in whatever form
presented, must be between the husband and wife, before
either can be a witness for or against the other; and that
they cannot evade the force of this common law rule of evi-
dence, where the controversy is between one, or both of
them, and a stranger by one of them becoming plaintiff and
suing the other as a defendant, with such stranger.    This
Court will ascertain where the controversy in fact is, and
between whom it arises.    If the controversy arises between a
stranger and the husband and wife, or between him and
either the husband or wife, then in such a controversy both
husband and wife are incompetent as witnesses for, or against
each other.    We are therefore of opinion that the said fifth
exception to said section 23 is to be construed as if the same
were in these words:    " A husband shall not be examined
for or against his wife, nor a wife for or against her husband,
except in a '*controversy*' between husband and wife."

The controversy in the case at bar being between the plaintiff and her said husband C. S. Anderson on the one side, and the defendants Wm. R. Snyder, Rebecca A. Hunter and Fanny Hunter on the other, the said C. S. Anderson was incompetent to testify on behalf of the plaintiff who is his wife, and the exceptions to the reading of his deposition, ought to have been sustained.

It remains to consider whether the said agreement dated the 29th of June, 1875, made between the said Wm. R. Snyder, and the plaintiff, was a sale of said Roanoke lands to her in gross, or a sale by the acre, and whether she is entitled to compensation for any deficiency in the number of acres, alleged to be contained therein, and if so what is the amount of compensation to which she is entitled for such deficiency.

By the terms of said agreement dated the 29th of June, 1875, between said Wm. R. Snyder of the first part and said plaintiff of the second part, in consideration of the conveyance to him of said lands in Greenbrier county, the said Snyder sold, and bound himself to convey by deed of general warranty free from encumbrance to the said plaintiff "all that portion of the home place of Mrs. Margaret Johnson purchased by said William R. Snyder in March, 1875, lying adjoining the town of Salem on the west side, the lands of F. J. Chapman and Dr. Thos. Dillard, excepting thirty acres of said home place, on which the residence and buildings of said Mrs. Margaret Johnson are situated—the said thirty acres lie fronting on the McAdamized road ninety-six poles, running north fifty poles, east ninety-six poles and south fifty poles—leaving a balance of ninety acres of said home place, more or less, which is to be conveyed by said William R. Snyder to said Jennie Anderson; also six hundred acres, more or less, of woodland lying about two miles north of the town of Salem, consisting of that portion of the home place of C. L. Snyder, deceased, conveyed to said William R. Snyder by F. Johnson, administrator de bonis non of said C. L. Snyder, deceased, five hundred and thirty-six acres purchased by said William R. Snyder of C. W. Burwell, administrator of Nathaniel Burwell, deceased, at a sale of said lands of said Nathaniel Burwell adjoining the lands of George Stevens, F. J. Chapman and others; the said two parcels

adjoining each other, and making six hundred acres, more or less, of woodland as aforesaid," all of which lands were situated in Roanoke county Virginia.

In the case of *Crislip, Guardian, &c.*, v. *Cain*, reported in 19 W. Va. 438, this Court decided, that "if a vendor by his written contract agrees to convey for a specified price, a tract of land described by metes and bounds or otherwise, with the words added, containing a specified number of acres, this, on the face of such contract is a contract not by the acre, but in gross, and without any implied warranty of the quantity; and that the law as above stated would not be varied by the statement of the vendor in said contract that the land contained a specified number of acres "more or less," as this statement would be no less positive than the other; for the words more or less are not construed to mean, '*as estimated*,' '*as supposed*,' but are construed to mean *about* the specified number of acres, and are designed to cover only such small errors as usually occur in surveys." In the same case it is further held, that such a contract not being ambiguous on the face of it no parol evidence is admissible to explain, alter or modify it, by showing it was a sale by the acre and not a sale in gross—and that in such a case, in the absence of any fraud on the part of the vendor, no abatement on account of a deficiency in the number of acres is allowed as it was the result of a mutual innocent mistake of the parties. *Ib.* syllabus 14 p. 441.

Applying these principles to the said contract of the 29th of June, 1875, we find that the terms thereof bring it precisely within the rule laid down in *Crislip, Guardian, &c.* v. *Cain*; that it is a sale in gross, and not a sale by the acre, that no warranty of the number of acres are thereby implied; that no ambiguity exists upon the face thereof, and therefore none of the parol testimony taken in the case can be used to explain, alter or modify the same, and that the said plaintiff is not entitled to any compensation for that cause on account of any deficiency in the quantity of said lands.

But although the sale be in gross and not by the acre, yet if the vendor induce the vendee to purchase, falsely represents to him that the land contains a specified number of acres, or that number, "more or less," and the vendee relies

on the truth of such representations, and is thereby induced to purchase the land as containing about that number of acres, at a price he would not otherwise have given for it, such representations even where there is no fraud, may amount to an implied warranty of the number of acres, and the vendor may be compelled to account to said vendee for any deficiency in the quantity of the land. And if such statements be not qualified by the vendor, the vendee has a right to believe and to rely upon them, as having been made on the personal knowledge of the vendor, and a vendee may, and he naturally does, rely upon such representations of his vendor as to the quantity of said land. And as the quantity of the land is generally a material matter in the purchase of a tract of land, it ought *prima facie* to be regarded, that the vendee was induced to pay, or to agree to pay the price named in the said contract, because of the statement contained in it of the number of acres in the tract of land sold; and in the absence of all proof, the vendor must be regarded as guilty of a fraud on the vendee, and for this reason also a court of equity will require him to make to the vendee a proportionate abatement of the purchase-money if the same be not paid; and by the same process of reasoning, if the vendee has paid all his purchase-money the vendee may compel the vendor to make compensation (if such statements be untrue) if any material deficiency in the number of acres is found to exist. These principles are fully discussed in the exhaustive argument of Judge Green in delivering the opinion of the Court in the case of *Crislip, Guardian, &c.* v. *Cain,* reported in 19 W. Va. 438.

The plaintiff in the case at bar, by the allegations of her bill brings herself within the rule laid down in the last two propositions. The testimony fully establishes the fact that in the "Johnson tract" there is a deficiency of eight and one half acres, and in the "woodland" tract of twenty-five and one half acres. There is some conflict between the testimony given by the plaintiff, and that given by the defendant Wm. R. Snyder. She testifies that the one hundred and sixty acres of land in Greenbrier county was her separate property (and this is not denied) that her husband was never authorized to sell, or contract to sell her said land to said

Snyder, and that the negotiations for the sale thereof were conducted between herself and Snyder; that she alone agreed on the terms of the exchange; that he represented to her that the "Johnson land" contained ninety acres, and the "woodland" six hundred acres; that she took his word for it; that she had no knowledge at all of said lands; that she never saw said lands before said trade, nor until five months afterwards; that she went by what her husband and Snyder said about the lands; that Snyder always valued both of said tracts in Roanoke at so much an acre, and he finally put the "Johnson land" at sixty dollars and the "woodland" at two dollars per acre; that Snyder said there was ninty acres in the one tract, and six hundred acres in the other; that he never valued said land at any time by the tract or boundary, but alwads at so much an acre; that she took one tract at sixty dollars and the other at two dollars per acre; that Snyder said the "Johnson tract" was an old survey, and might run out one hundred acres, and that he would insure her ninety acres, and that in the summer of 1877, and since she had ascertained the deficiencies to exist she went to settle with him, and she told him the land did not hold out and that he replied to her "it did hold out, and that Uncle John Snyder who surveyed it for you was not in his right mind;" that he refused to settle at all, and said he had his lawyer picked out; that the reason he gave for refusing to settle was, that there were ninety acres of the "Johnson land," and six hundred acres of the "woodland." She further testified that the negotiations with said Snyder took place at her home and not elsewhere, and that no one was present but herself and husband and said Snyder, and that the writings were prepared by Mr. A. C. Snyder at his office and were executed at the house of Mrs. White in her presence and in the presence of her mother and J. Preston; that Snyder has never paid to her any part of said eight hundred dollars. Another witness, John Snyder, was examined on behalf of plaintiff who testified that he had been the surveyor of Roanoke county for twenty-five years; that he told said Wm. R. Snyder that the "Johnson tract" contained eighty-two or eighty-three acres; that both before and after the trade with the plaintiff said Snyder represented one of said tracts to

contain ninety acres, and that the same was very fine land, and would soon be worth one hundred dollars per acre. No other witness except her husband was examined on her behalf on this branch of the subject, and his testimony upon the exception of said Snyder thereto has been excluded as incompetent.

The defendant Snyder was the only witness examined in his behalf upon these same questions. The defendant Snyder in his answer to the plaintiff's bill and in his deposition states that all of the negotiations about the exchange of said lands were made by him with said Charles S. Anderson, the husband of said plaintiff; that he and said husband agreed upon the terms of the exchange of said lands, and that she only ratified them. In his said answer to said bill he admits that he told the plaintiff's husband during their negotiations that his title papers called for but eighty acres in the "Johnson land," though he believed it would run out eighty-five or ninety acres, and that at the request of her said husband it was put in the written contract at *"ninety acres more or less,"* that the words "more or less" were put in the contract for the express purpose of excluding any warranty of the quantity of land, and *this* was fully *understood* and *agreed* to by her said husband, and that the same was true also in regard to the "woodland" tract; he denies in his deposition that these terms were discussed in the hearing of the plaintiff, further than to announce to her the conclusions, which she agreed to upon condition that witness would make her a present of said horse.

The testimony of the said husband being out of the case, there is no evidence to sustain the allegation of the answer that the negotiations were made with the said husband, and not with the plaintiff herself, except the deposition of the defendant Snyder himself, who further testified that in May, 1875, the plaintiff and her said husband visited Roanoke county, and on their return *they* came to his house and urged and requested him to trade them *eighty acres* of his "Johnson land" for their home farm and mountain land in Greenbrier county, all of which statements are emphatically denied by the plaintiff in her deposition; he further testifies that on the 29th of June, 1875, he went to the plaintiff's

home to make the trade; that he discussed the terms of it with her husband on the porch, not in her hearing; that plaintiff's husband offered to take the eighty acres of the "Johnson land" at four thousand eight hundred dollars, the six hundred acres at one thousand two hundred dollars and wanted one thousand six hundred dollars difference; that defendant Snyder thought that this price for the Greenbrier lands was too high; that he then told said husband that he could sell the Johnson land at sixty dollars per acre; that he believed the eighty acres would amount to eighty-five or ninety acres; that there was orignally four hundred acres in the tract; that a good deal had been sold off in lots, and that as well as he could remember (not having the plats with him) there was eighty-five acres left, and that he was satisfied it would not be less, and that taking all things into consideration, he did not think he ought to give more than six thousand eight hundred dollars for said Greenbrier lands, that is forty dollars per acre for the one hundred and sixty acres and four hundred dollars for the mountain land, and that he (the plaintiff's hunband) could have the eighty acres, "more or less" of the "Johnson land" at four thousand eight hundred dollars, the six hundred acres "more or less" for one thousand two hundred dollars, and eight hundred dollars difference; that said husband said he would go and see the plaintiff; that in a short time he returned and said the plaintiff would be satisfied if defendant would give her in addition, a horse worth one hundred and fifty dollars, and would let the husband have a bull, and would square accounts with him; that he agreed to do so, and the plaintiff came out on the porch and approved the trade; that on the next day they went to the office of A. C. Snyder, that said C. S. Anderson called witness out and expressed some fears that his mother-in-law who had dower in said one hundred and sixty acres, might be unwilling to relinquish it, and wanted witness to put the "Johnson land" in the contract at *ninety acres* "*more or less*," and if it was necessary, he would make his mother-in-law believe it was more. Mr. A. C. Snyder then drew up the papers in accordance with Mr. Anderson's wishes in this respect.

The defendant Snyder further testified that said Anderson

knew a great deal more about the land than he did, having had it rented for one or more years before the war, and that he more than once declared during the negotiations for the trade, that from his personal knowledge of the land, and its bounds he was satisfied there were ninety acres or more; that he made the trade with the plaintiff's husband *alone, no one else being present;* that the plaintiff approved of it after the trade was made; that he did not represent the "Johnson land" to said C. S. Anderson as containing ninety acres, nor the "woodland" as containing six hundred acres, but told him that from what the surveyor had told witness, he believed it would be eighty-five or ninety acres, and that he sold it to said C. S. Anderson for *eighty* acres "more or less," and the "woodland" for six hundred acres "more or less;" and that he regarded the "Johnson" land as well worth sixty dollars per acre; that he was not well acquainted with said "woodland," but that he had sold land of the same quality adjoining it at five and seven dollars per acre. On cross-examination he further testified that he did not tell the plaintiff, that there were only *eighty acres* in the "Johnson land," having every reason to believe there was more; and that he paid out none of said eight hundred dollars to said plaintiff or upon her order, except fifty dollars on the horse which cost two hundred dollars instead of one hundred and fifty dollars. It will be observed that every statement made by the defendant Snyder, in regard to the negotiation of the trade having been made with the said C. S. Anderson is expressly denied by the plaintiff; he alleging that every proposition and representation in regard to said exchange of lands was made to, and with said husband alone; and she, that all the negotiations were made between herself and said Snyder, and not between him and her said husband; and that Snyder did represent and insure the said lands to contain ninety and six hundred acres, both before and at the time of the trade, which she believed to be true, and took the lands on his word; he alleging that he believed the "Johnson land" did contain eighty-five or ninety acres, or perhaps one hundred acres, and that he consented to put the "Johnson land" in the contract at ninety acres for the doubtful purpose of enabling said Anderson to deceive his mother-in-law, as to

the correct number of acres. The plaintiff and said Snyder both agree that no person was present during said negotiations except themselves and said husband of the plaintiff. Assuming that all of them are equally worthy of credit as witnesses, it seems unfortunate for the defendant Snyder, if his testimony is true, that by his exceptions to the testimony of said husband, he should have placed himself in a position where it is impossible to corroborate his testimony by that of said Anderson. The said Snyder knew that the said tract of one hundred and sixty acres of land, which was the principal subject in said negotiations, was the separate property of said plaintiff. It is proved and not contradicted that the plaintiff had never seen, and that she knew nothing at all, about the quantity or value of said Roanoke lands, and that she took them on the word of said Snyder. So far as this record shows, the defendant, Snyder, took no pains to inform the plaintiff of any of the statements or representations made by him to her husband during said negotiations, and he does not even deny her statement made in her deposition, that she called on him for a settlement and informed him of the deficiencies in said lands, and that he then insisted that the "Johnson land" did contain ninety acres, and the "woodland" six hundred acres, and that "Uncle John Snyder who surveyed the land for her was not in his right mind." But after the negotiations were all at an end, and the contract was to be put in binding form; and the plaintiff and her husband had executed to said Snyder a deed with covenants of general warranty for said one hundred and sixty acres, and the moiety of said two hundred and eighteen acres of land in Greenbrier county, he executed said agreement with the plaintiff dated the 29th June, 1875, reciting that in consideration of the conveyance to him of said lands, he sold and agreed to convey to *her*, all that portion of the home place of Margaret Johnson, &c., "leaving a balance of *ninety acres*, 'more or less,' and also *six hundred acres*, 'more or less,' of 'woodland,' &c., consisting of two parcels described in said contract, the said 'two parcels adjoining each other, and making *six hundred acres*, 'more or less,' of 'woodland' as aforesaid.'" There is nothing in the terms of this contract to inform the plaintiff that she had not a right to

rely thereon; or that any less quantity was contained in said tracts, than what is specified therein. It is apparent from all of the statements of the defendant, Snyder, that he intended to derive every possible advantage to himself by representing the "Johnson land" to contain ninety, and the "woodland" six hundred acres, supposing all the time that he was effectually guarding himself against liability in case of a deficiency in the number of acres, by adding the words, "more or less" to the specified quantity in each tract. It may be that said Snyder had good reason to believe, and that he did believe that said tracts did actually contain said specified number of acres, yet if he made such representations to the plaintiff without qualification, and in such a manner as to lead her to believe they were made upon his personal knowledge, and she having no knowledge of the said lands relied upon such representations, and was thereby mislead to her prejudice, and induced to purchase the same, at the price agreed upon, and such representations as to the quantity of said lands are untrue, he will be held liable to make compensation for such deficiency if the said purchase-money has been paid.

The measure of compensation is the contract price of the land by the acre if the same can be ascertained; but if the same be unascertainable, then the average value by the acre of the tract of land in which the deficiency exists must furnish such measure of compensation. The testimony in this cause does not disclose the contract price of either of said parcels of land, but it fully warrants the report of Commissioner Preston, that on the 29th June, 1875—the said "Johnson land" was worth forty dollars—and said "woodland" fifty cents per acre, and that the value of said deficiencies on that day was three hundred and fifty-two dollars and seventy-five cents. By the said first report of Commissioner Preston it appears to the satisfaction of this Court by sub-statement No. 2, that there remains due from said Snyder to the plaintiff upon said eight hundred dollars of purchase-money, agreed to be paid for the difference in the value of said lands, the sum of four hundred and twenty-three dollars and eighty-one cents with interest thereon from the 25th day of May, 1878. We are therefore of opinion that the plaintiff's exceptions thereto, and to the first general state-

ment of said report fixing the value of said deficiencies at three hundred and fifty-two dollars and seventy-five cents be overruled, and that said report as to said portions so excepted to, be confirmed, and that plaintiff's exceptions to sub-statement No. 3, and to general statement No. 6 of said report be sustained.

Upon consideration of the pleadings and proofs in this cause we are of opinion that the plaintiff is not entitled to have the said deed and contract of the 29th June, 1875, canceled and annulled; nor is she entitled to claim from the defendant Snyder any other or greater sum as the difference in the value of said lands than the said sum of eight hundred dollars with interest thereon from the 1st day of October, 1875, after deducting therefrom such credits as he was entitled to ; but she is entitled to a conveyance by deed with covenants of general warranty free from encumbrances, of the said lands in Roanoke county, Virginia, and also to the said sum of three hundred and fifty-two dollars and seventy-five cents as of the date of the 29th of June, 1875, being the amount of compensation ascertained to be due to her from said Snyder as of that date which ought to have been applied to extinguish that much of the credits allowed by Commissioner Preston in sub-statement No. 2 of his report, as credits upon said sum of eight hundred dollars thereby reducing the balance due thereon to the sum of four hundred and twenty-three dollars and eighty-one cents, with interest from the 25th of May, 1878, still due to her from Snyder; and not having been so applied this Court will treat the same as if it had been so done, and as both of said sums three hundred and fifty-two dollars and seventy-five cents and four hundred and twenty-three dollars and eighty-one cents, do not exceed the said sum of eight hundred dollars to secure the payment of which a vendor's lien was retained upon said lands in Greenbrier county, this Court holds the said vendor's lien as still existing not only to secure to the said plaintiff the payment of said sum of four hundred and twenty-three dollars and eighty-one cents with interest from the 25th of May, 1878, but also of the said sum of three hundred and fifty-two dollars and seventy-five cents with interest from the 29th of June, 1875.

For the reasons hereinbefore stated the decrees of the circuit court of Greenbrier county entered in this cause on the 12th of June, 1880, and on the 11th day of November, 1880, are wholly set aside, reversed and annulled, and this cause is remanded to the circuit court of Greenbrier county for further proceedings therein to be had according to the principles settled in this opinion. And inasmuch as the decree wrongfully entered in this cause on the 12th of June, 1880, for which error the said decrees of the said circuit court are now reversed, appears to have been so entered by the consent of the defendant William R. Snyder, to the cancellation of said contract and deed of the 29th of June, 1875 ; and as the appellee Jennie Anderson is the party substantially prevailing in this Court, it is adjudged, ordered and decreed, that the appellant do pay to the appellee, Jennie Anderson, her costs by her about her defense in this Court expended.

JUDGES JOHNSON AND GREEN CONCURRED.

DECREE REVERSED.     CAUSE REMANDED.