# CHARLESTON.

SMITH, ADM'R *v.* YOKE *et al.*

Submitted February 3, 1886.—Decided February 20, 1886.

1. Where the decree sought to be reversed is based upon depositions, which are so conflicting and of such a doubtful and unsatisfactory character, that different minds and different judges might reasonably disagree as to the facts proved by them, or the proper conclusion to be deduced therefrom, the appellate court will decline to reverse the finding or decree of the chancellor, although the testimony may be such that the appellate court might have pronounced a different decree, if it had acted upon the cause in the first instance. (p. 641.)

2. A cause in which the decree of the circuit court, setting aside a conveyance of real estate because fraudulent as to creditors of the grantor, is affirmed in accordance with the principle above declared. (p.6 42.)

*J. M. Bennett* for appellant.

*W. W. & John Brannon* for appellee.

| | |
|---|---|
| 27 | 639 |
| 28 | 387 |
| 29 | 116 |
| 29 | 731 |
| 30 | 195 |
| 31 | 141 |
| 31 | 571 |
| 31 | 592 |
| 32 | 44 |
| 33 | 165 |
| 33 | 278 |
| 33 | 510 |
| 27 | 639 |
| 35 | 731 |
| 36 | 46 |
| 36 | 683 |
| 27 | 639 |
| 37 | 12 |
| 27 | 639 |
| 38 | 80 |
| 38 | 677 |
| 27 | 639 |
| 40 | 34 |
| 27 | 639 |
| 42 | 580 |
| 27 | 639 |
| 43 | 10 |
| 43 | 366 |
| 43 | 419 |
| 43 | 468 |
| 27 | 639 |
| 44 | 285 |
| 44 | 363 |
| 44 | 749 |
| 27 | 639 |
| f46 | 229 |
| 27 | 639 |
| 47 | 37 |
| 47 | 247 |
| 47 | 692 |
| 47 | 835 |
| 27 | 639 |
| 48 | 460 |
| 48 | 661 |
| 27 | 639 |
| f49 | 404 |
| 49 | 442 |
| 27 | 639 |
| 54 | 191 |
| 27 | 639 |
| 55 | 661 |
| 27 | 639 |
| f57 | 187 |

SNYDER, JUDGE:

This is a suit brought May 10, 1879, in the circuit court of Lewis county by M. T. Smith, administrator of John Corothers, deceased, against Amy Yoke, John J. Bott and others, to subject a tract of 153 acres of land in said county to the payment of two judgments recovered by the plaintiff against Jacob Bott, and to have certain deeds made by said Jacob Bott conveying said land to the defendants, Amy Yoke and John J. Bott, declared fraudulent and set aside as to the debts on which said judgments are founded. The said defendants answered the plaintiff's bill claiming that a full consideration had been paid for said conveyances, and denying that they were made with any intent to delay, hinder or defraud creditors on their part, and that they had no notice of such intent, if any existed on the part of their grantor. The said Amy Yoke further showed by her answer that since the conveyance to her of said 153 acres of land she had sold and conveyed about 100 acres thereof to Marshall Clark for a full consideration, all of which had been applied to the payment of liens existing on the land at the time it was conveyed to her.

Depositions were taken by the plaintiff and said defendants in support of the bill and answers, and on March 17, 1882, the court pronounced its decree setting aside the conveyances, by which the title to said land was vested in said Amy Yoke, as to the debts of the plaintiff and others; but finding that the sale and conveyance of 100 acres part thereof to Marshall Clark were made in good faith and the proceeds thereof properly applied to the payment of the liens thereon prior to those of the plaintiff, the court ordered the sale of the residue only of said 153 acres to pay the debts of the plaintiff. From this decree the defendant Amy Yoke appealed.

The only question presented by this appeal is, whether or not testimony, upon which the cause was heard in the court below, warranted the decree. The evidence, upon which the answer to this question depends, is exclusively parol, being the depositions taken and filed by the respective parties; and this testimony is irreconcilably conflicting in regard to the material facts, upon which any decree in the cause must be founded. The rule of the appellate court governing the re-

view of evidence in actions at law in such cases is to disregard all the conflicting evidence of the plaintiff. in error and give full faith and credit to that of the opposite party, and unless, when the evidence of the respective parties is so treated, it plainly appears that the verdict is not sustained by the evidence, the Appellate Court will refuse to set aside the verdict. *Sheff* v. *Huntington*, 16 W. Va. 308 ; *Black* v. *Thomas*, 21 W. Va. 709 ; *Morgan* v. *Fleming*, 24 W. Va. 186.

One and perhaps the principal reason for this rule is, that the trial-court and jury see the witnesses and from their manner and conduct while testifying have peculiar opportunities of judging of the weight and credibility of their testimony, an advantage not possessed by the appellate court. In equity causes neither the chancellor nor the appellate court have the witnesses before them. The depositions are all that appear, and both tribunals may inspect these, and thus each has the same opportunities of judging of the character and weight to be given to the testimony. It is, therefore, apparent that this rule is not entitled to the same consideration in equity causes, as is given to it in actions at law tried by a jury. But it is, nevertheless, true that the rule necessarily applies to some extent and with modified effect in chancery causes. This necessity may be thus illustrated : In a very large proportion of the causes, the facts to be deduced from the conflicting testimony are of such an ambiguous quality or the proper conclusion so doubtful, that different minds would be unable to agree as to the effect to be given to them. In addition to this, the testimony itself may be so questionable and unsatisfactory in its character, that any fact deduced from it must be founded to some extent upon conjecture. The chancellor, in passing upon such a case, would possibly and unconsciously reach a conclusion which might and naturally would be colored in some degree by his own experience and temperament, a conclusion which the appellate court with a different experience or temperament might be inclined to reject, not because the judgment is better or intelligence greater or less in the one instance than the other, but because judges are men and are different. If the most that the chancellor can do, in a case of great doubt and uncertainty, is to make a fair and honest conject-

are as to the proper conclusion deducible from the conflicting, doubtful and unsatisfactory evidence in the cause, the appellate court ought not to be called upon or expected by an opposite conjecture to reverse such conclusion. When the testimony leaves the result in doubt the appellate court ought not to reverse the decree.

The true rule in equity cases is or ought to be, it seems to me, that, when the testimony is so conflicting and of such a doubtful and unsatisfactory character, that different minds and different judges might reasonably disagree as to the facts established by it or the proper conclusion to be deduced from it, the appellate court should decline to reverse the finding or decree of the chancellor, although the testimony may be such that the appellate court might have pronounced a different decree if it had acted upon the cause in the first instance. There are, however, some cases, in which the testimony is conflicting, where there ought and should be no real doubt in the minds of reasonable men as to what should be the proper finding or conclusion. In such cases the appellate court would not hesitate to reverse a decree contrary to its judgment and convictions.

Influenced by the principle and policy of the rule just indicated this court has frequently decided that when questions of fact are referred to a commissioner, the findings of the commissioner will be sustained, unless it plainly appears that they are not warranted by any reasonable view of the testimony. And this rule operates with peculiar force in an appellate court, where the findings of the commissioner have been approved and sustained by the chancellor. *Handy* v. *Scott*, 26 W. Va. 710; *Boyd* v. *Gunnison*, 14 W. Va. 1; *Graham* v. *Graham*, 21 W. Va. 698.

Applying these principles to the cause at bar, I can discover no possible ground, upon which this Court could be justified in reversing the decree of the circuit court. Before the institution of this suit Jacob Bott, the grantor in the deeds declared fraudulent, had died insolvent. The appellant, Amy Yoke, and John J. Bott the grantees in said deeds were the children of the grantor. At the time the conveyances were made the grantor was hopelessly embarrassed, if not utterly insolvent, and the appellant had but little property. The con-

sideration alleged was $2,700.00, of which it is claimed $1,200.00 was paid down and a note given for the residue to be paid eight years after date, yet the appellant claims that she paid off this large note within less than two years after it was given and more than six years before it became due. The appellant and her father were living in the same family upon the land at the time of the sale and so continued thereafter until the death of the father several years after the alleged sale. During this whole time there was no apparent change in the ownership and control of the farm, the father continued to use and manage it as his own just as he did before the pretended sale. A few days before the conveyance the grantor was sued for a large debt. The land conveyed was all all he owned. Just before the conveyance he said if he was sued he would fix things so that his creditors could not get their debts, and he afterwards said he was not able to pay the plaintiff's debt, that he had put his property out of his hands and that, if after he was gone Amy, the appellant, saw proper to pay the plaintiff's debt it was all well and good. These are merely samples of the plaintiff's evidence in the cause, disputed it is true by some very improbable testimony and equivocal circumstances offered in evidence by the appellant.

I do not consider that any valuable purpose could be subserved by further reference to the testimony. To my mind, upon a careful consideration of the whole proofs in the cause, it is plain that there never was any *bona fide* sale or conveyance of the land to the appellant. The transaction was a mere cover and pretense to hinder, delay and defraud the creditors of the grantor. If the evidence and circumstances were much less conclusive, this Court would not, under the rules and principles of equity courts in such cases, reverse the finding and the decree of the circuit court. The decree appealed from must therefore be affirmed.

AFFIRMED.