# CHARLESTON.

## PRICHARD v. EVANS.

Submitted January 18, 1888.—Decided February 25, 1888.

1. JURISDICTION—VENDOR AND VENDEE—DEFICIENCY IN QUANTITY—ABATEMENT OF PURCHASE PRICE.

A court of equity has jurisdiction to abate from the purchase-money due from a vendee, for a deficiency in a sale of land, by which the vendee was injured through the fraud of the vendor in misrepresenting the quantity of the land, on the face of his contract or deed, or orally. (p. 140.)

2. REVERSAL OF DECREE.

Where the decree sought to be reversed is based upon depositions which are so conflicting, and of such a doubtful and unsatisfactory character, that different minds and different judges might reasonably disagree as to the facts proved by them, or the proper conclusion to be deduced therefrom, the appellate court will decline to reverse the decree, although the testimony may be such that the appellate court might have rendered a different decree if it had acted on the cause in the first instance. (p. 141.)

3. REVERSAL OF DECREE—COSTS.

If no other error is found in a decree, it will not be reversed because the court may have erred in decreeing costs. (p. 141.)

*Martin & Woods* for appellants.

*A. F. Haymond* for appellees.

JOHNSON, PRESIDENT:

By an agreement made on the 20th day of April, 1872, between James Evans and B. M. Dorsey of the one part, and Alpheus Prichard, Amos Prichard, and Nimrod Morgan, of the other part, the said Evans and Dorsey sold to the Prichards and Morgan " their part of what is known as the Evans and Conaway Plum Run Farm, as divided by Conaway and Evans and Dorsey," for the price of $6,100.00,—$1,525.00 to be paid on the 1st day of October thereafter, and the residue in three equal annual payments; all of the payments to draw interest from the date of the contract; the purchasers to execute three notes, within a reasonable time, for the purchase-

31 137
31 571
31 592
33 165
31 137
35 731
36 469
31 137
38 81
38 677
31 137
40 174
31 137
41 318
31 137
42 580
31 137
43 419
31 137
e 51 631
31 137
54 191
31 137
55 661
31 137
57 187
31 137
58 240
31 137
59 45
31 137
61 235

money, and on the payment of the first payment of $1,525.00 on the 1st day of October next thereafter, said Evans and Dorsey bound themselves in a penalty of $5,000.00 to make or cause to be made to the parties of the second part "a good and sufficient deed for the land." The parties of the second part were to have immediate possession of the land. The notes were executed, and part of the purchase-money was paid. An action at law was brought to recover on three of the said purchase-money bonds of $1,525.00 each. Judgment by default was at the November term, 1883, of the Circuit Court of Marion county rendered in said action, after allowing credits for $2,960.56.

In February, 1884, the plaintiffs, Alpheus and Amos Prichard and Nimrod Morgan, filed their bill of injunction, to restrain the defendants from enforcing said judgment, and among other things alleged that at the time said contract of the 20th day of April, 1872, was made, and as an inducement to their making it, said Evans and Dorsey fraudulently represented to them that said Evans was a surveyor and had surveyed said land, and that it contained between 235 and 240 acres, and not less than 235 acres by the actual survey and measurement made by said James Evans; that they were ignorant of the quantity of acres in said tract, and relied on the representations so made, and but for such representations they would not have made such purchase. It alleges that the land fell short about 15 acres; that the tract contained a little less than 220 acres. Plaintiffs say they have paid about $42.00 taxes on said land, which defendants should have paid. The bill prays an injunction to the judgment, and that the price of the land should be abated for the 15 acres the land fell short. The injunction was granted as to $1,500.00 of the judgment.

The defendants answered, denying explicitly that they or either of them made the representation charged in the bill, and also that the plaintiffs were ignorant of the land. It avers that plaintiffs knew more about the land than they did. The answer avers that on the 8th day of August, 1874, they made a deed, acknowledged for record, conveying said land to plaintiffs, which deed declares the land was sold "in gross, and not by the acre;" that this deed was accepted,

and held without objection or complaint until the 2d day of November, 1882, a period of more than eight years, when at a conference between the parties they made known to the defendants that they rejected said deed, and the same was then left in custody of respondents, who, in order to preserve the same, took charge of it, and the same is now here filed with the answer, and tendered to plaintiffs, whose deed it is; that the land was on the commissioner's book from 1876 to 1884 in the name of respondents,—the plaintiffs having failed to record their deed,—taxed as 219 acres, of which plaintiffs had notice, " and said taxes have, as respondents believe and charge, been duly paid every year by plaintiffs, who were legally bound to pay the same."

The answer further says, " respondents admit that on the 2d day of November, 1882, at said conference between them and the plaintiffs,   *   *   *   respondents tendered to the plaintiffs a deed for said land, which was dated September 16, 1882, which was in substance and effect the same as said deed dated August 8, 1874; the only substantial difference between them consisting in this; that in giving the courses and distances of said land, the latter gives the courses and distances of the three lines dividing this land from the parcel which was assigned to Conaway." They further say that the only reason inducing respondents to tender the last-mentioned deed was their desire to conform to every reasonable request.

The depositions of the three plaintiffs were taken on their side, and of the two defendants on their side, and the other depositions did not relate to material matter in controversy, except one as to the $42.00 taxes, and another to the actual quantity of acres in the tract of land. On the 21st day of December, 1885, the cause was heard on the bill, the answer, general replication, exhibits, and depositions, and motion to dissolve the injunction. The court gave a credit for $42.00 taxes paid by plaintiffs, which defendants ought to have paid; found that the defendants had misrepresented the quantity of land to plaintiffs,—in fact found the issue in favor of the plaintiffs; ascertained that the abatement should be $512.62, which, with the interest on both sums, amounts to $949.78, as of February, 16, 1884, as to which sum the injunction was made perpetual, and as to the residue of the

$1,500.00 enjoined the injunction was dissolved; upon which damages were awarded at 10 *per cent. per annum* from the time the injunction took effect, which principal and damages at that time amounted to $641.94, for which the court gave a decree against the plaintiffs; and the costs of the injunction suit were awarded to the plaintiffs against the defendants, Evans and Dorsey. And it was further decreed that plaintiffs have leave to withdraw from the papers the deed executed by Evans and wife and B. M. Dorsey to said plaintiffs for said land on the 16th day of September, 1882, and filed with defendants' answer as an exhibit. From this decree Evans and Dorsey appealed.

It seems to me the doctrine of estoppel cannot apply here, as the purchase-money was not all paid, and the deed not accepted; and they would not have been estopped if the deed had been accepted. A court of equity has jurisdiction to abate from the purchase-money due from a vendee for the deficiency in a sale of land, by which the vendee was injured through the fraud of the vendor in misrepresenting the quantity of the land on the face of his contract or deed or orally. *Crislip* v. *Cain*, 19 W. Va. 442, point 20 in syllabus; *Snyder* v. *Anderson*, 21 W. Va. 647. It is under this well-settled law the abatement was allowed in this cause. It is right under the pleadings, unless the decree of the court was not justified by the proof. Here the contract did not specify any number of acres in the tract sold; the sale was of "their [the defendants] part of what is known as the 'Evans and Conaway Plum Run Farm,'" for which the plaintiffs were to pay $6,100.00.

Under the pleadings and proof the court found, that, at the time the contract was made, the plaintiffs—the purchasers—were ignorant of the quantity of acres in the said part of the Plum Run farm, and relied upon the representations of the defendants as to the quantity; and that Evans, one of the defendants, was a surveyor, and a very short time before the contract was made, had surveyed the land he and Dorsey were about to sell; and in the presence of Dorsey and the three plaintiffs, who were all together when the contract was made, represented that the tract contained at least 235 acres, and it might contain 240 acres.

The three plaintiffs all swear positively to this representation. Dorsey positively denies it, and Evans at first does not recollect it, but finally denies making it. The land appears from the evidence to have appeared on the commissioner's book in 1876, and on until 1884, in the names of the vendors, Evans and Dorsey, as 219 acres; and it seems the taxes were paid by the vendees,—the plaintiffs,—and it is argued that thus they had notice from the tax-tickets, that the land contained only 219 acres. There is no evidence that they had the land put on the books as 219 acres; and the evidence under these circumstances could not be construed into an admission, that they knew, when they bought the land, that the tract contained only 219 acres. The plaintiffs, in their testimony, show that they did not discover that there were not at least 235 acres in the tract, until in 1882, when they learned by a survey of the other part of the original tract that it fell short, when they had their part surveyed, and discovered for the first time that the representations made to them when the sale was made were false, and that the tract contained only $215\frac{1}{4}$ acres. The sum of $42.00 taxes claimed in the bill was properly allowed, as it is proved by the officer who collected it.

As to the main question as to the sufficiency of proof of the false representations, and whether they were relied on by the plaintiffs, the evidence, it is true, is conflicting, but the rule is that where the decree sought to be reversed is based upon depositions which are so conflicting and of such a doubtful and unsatisfactory character that different minds and different judges might reasonably disagree as to the facts proved by them, or the proper conclusions to be deduced therefrom, the Appellate Court will decline to reverse the finding, or decree of the chancellor, although the testimony may be such that the Appellate Court might have rendered a different decree, if it had acted upon the cause in the first instance. *Smith* v. *Yoke*, 27 W. Va. 639; *Apple* v. *Ganong*, 47 Miss. 189; *Doonan* v. *Glynn*, 28 W. Va. 715.

We can not say here that the court was not justified from the evidence in rendering the decree it did. But it is insisted that the court should have given costs to the defendant. As we find no error in this record other than in decreeing costs,

even if there were error in that, we would not disturb the decree, on the well-settled principle that a decree for costs alone does not give the Appellate Court jurisdiction.

There is no error in the decree for which it should be reversed; it is therefore affirmed.

AFFIRMED.