# CHARLESTON.

## FREDERICK *v.* FREDERICK.

Submitted September 10, 1888.—Decided November 24, 1888.

1. PARTITION—BY PAROL—EXECUTION OF DEEDS.

    A parol partition of land, acquiesced in for a long time by the parties, can not be disturbed; but suit may be maintained to ascertain the precise terms, on which it was made, and to have deeds of partition executed. (p. 569.)

2. PARTITION—RIGHT OF WAY—DECREE.

    Where a parol partition provided for a right of way over one of the lots without specifying, where it should be located or the width thereof, a decree fixing its width at four feet and its location at the end of the lot did not prejudice the owner of the lot. (p. 571.)

3. REVERSAL OF DECREE.

    Where the decree sought to be reversed is based upon depositions, which are so conflicting and of such a doubtful and unsatisfactory character, that different minds and different judges might reasonably disagree as to the facts proved by them or the proper conclusion to be deduced therefrom, the appellate court will decline to reverse the decree, although the testimony may be such, that the appellate court might have rendered a different decree if it had decided the cause in the first instance. (p. 571.)

*R. Edgar Hall* for appellants.

*J. J. Woods* for appellee.

JOHNSON, PRESIDENT:

The plaintiff filed her bill in the Municipal Court of Wheeling alleging, that in January, 1864, David and Louis Frederick became the joint owners of three fourths of lot No. 100 in North Wheeling by purchase and conveyance from George Schell; that in March, 1871, the same parties purchased from Thomas Sweeney the undivided two thirds of five feet and ten inches of ground adjoining, being a part of lot 89, to be used as an alley by the said Sweeney and the said David and Louis Frederick; that Sweeney conveyed this interest to them by deed, a copy of which is filed as an exhibit with the bill, from which it appears it was the intention of the party of the first part " to convey to the parties of the second part the undivided two thirds of the above named five feet ten inches of ground, lying and being north of the line of a three-story brick house now on said lot No. 89, to be used as an alley by the first and second parties, and none others, without the permission of the first and second parties;" that the consideration for this conveyance was $200.00 in hand paid.

The bill further alleges, that at the time of the purchase of the three quarters of lot 100 there was on said lot a double frame dwelling-house suitable for the accommodation of two families, and that the land afterwards converted into an alley, before referred to, was, at that time without objection from the owner used as an entrance to and exit from Main street by the occupiers of said dwelling-house, and that said use so continued until the purchase of said alley in 1871 by the said Fredericks; that said purchase was made in order that said Fredericks might have a permanent and indisputable right to continue the use of said alley as a means of communication with Main street; that the said alley at its eastern terminus is contiguous to the north-west corner of lot 100, and, if continued, would cut said lot; that the purchase of said lot 100 and the double house thereon was made by the said David and Louis for the purpose of having homes for themselves and familes; that the said David and Louis were brothers, and their wives were sisters, and said property was specially adapted to the use of themselves and families; that after the said purchase David and Louis drew lots to decide, which part

of said double house and lot each was to own and occupy, with the understanding, that the one, who drew the south part, should pay the other the sum of $25 00; that the drawing decided, that David should have the south and Louis the north part, and David paid to Louis the $25.00 so agreed to be paid; that said property was used and occupied by the two brothers respectively, each occupying, using and repairing his own part, until they died, and that the heirs and devisees of David and Louis have since their death used the property in the same manner; that David died leaving his property by will to his wife; and that Louis died leaving a will.

The bill charges, that the $25.00 paid by David to Louis was in consideration of a right of way for David over the north part of the lot to the alley leading to the street, and that therefore the plaintiff is entitled to said right of way. The prayer of the bill is for a decree dividing said lot, and giving the plaintiff the south part together with a right of way four feet in width over the west part of the north half of said lot *etc.*

The defendants answered the bill admitting the parol partition, and that the respective parts have been ever since held according to that partition. They deny, however, that it was any part of the agreement for the partition, that the one, who drew the south half, should have a right of way over the north half, and deny, that the payment of the $25.00 from Louis to David was in consideration of such right of way; but aver, that the house on the south part was better than the other part, and David paid the money to Louis to equalize the value of the two parts. They admit the purchase of the ground for an alley, in 1871, but deny there was any alley there before that time. They aver, that before 1871 and after 1864 from the line, which now forms the south boundary of the alley running from Main street eastwardly to the north-west corner of lot 100, there was a vacant lot facing on Main street; and over this vacant lot Louis and Frederick as well as others before mentioned as living in a row of dwellings on Coal street, of which the said double house was one, passed and re-passed in going to and returning from the rear of their respective dwellings, but without the permission of the owner of said vacant lot. The answer asks, that the parti-

tion as made by the brothers, be allowed to stand; for other-
wise the interests of the respondents would be greatly im-
paired, and their property injured by allowing a right of
way over the same; and the answer prays, that the com-
plainant be required to execute a deed to respondents ac-
cording to the said partition.

A paper agreed to and filed in the record shows, that the de-
fendants, children of Louis Frederick deceased, are all over
twenty one years of age. Many depositions were taken, and
in May, 1888, the cause was heard, and the court decreed, that
the defendants should convey by deed of special warranty
to the plaintiff, Louisa Frederick, the south half of said lot,
describing it; and also convey to the plaintiff "a right of way
over the west part of the north part of said north three quar-
ters of said lot No. 100, said right of way to be four feet
in width from the west line of said lot, and to extend from
a line perpendicular to the party-wall before mentioned
to the north line of said lot." And it was further decreed,
that the said Louisa Frederick, the plaintiff, do convey with
special warranty to the said defendants the remaining north
part of said northern three fourths of lot No. 100 subject
to the said right of way, and that said conveyance be to said
Caroline Frederick for her life, remainder to Louis Fred-
erick, Henry Frederick and Elizabeth Frederick in equal
shares; and if any of said parties shall fail, neglect or re-
fuse to make said conveyances within thirty days, then a
commissioner appointed in the decree should execute the
same; and it was further decreed, that each side should pay
one-half the costs. From this decree the defendants ap-
pealed and were also granted a *supersedeas.*

The question presented is one of fact. Of course the parol
partition made by the parties themselves should stand. The
only question is as to the terms of that partition. There is
evidence tending to show, that it was agreed at the time of
the partition, that the party taking the south half of the
property should have the right of way over the north half,
so that he could by a much more convenient way go to
Main street, the way out by Coal street being very steep;
and that for this privilege David who drew the south half,
paid to Louis $25.00. On the other hand there is evidence
72

tending to show, that the south half was more valuable on account of its containing two small rooms more than the north half, and that was the consideration for the $25.00 and that there was nothing said about a right of way. It is not clear, whether at the time of the parol partition anything was said about a right of way. Neither is it clear, that there was not.

It seems to be a fact clearly established, that the owner of the south half from 1864 to 1871 passed over the north half and across a vacant lot to Main street; and, when the vacant lot was closed up, that the two brothers bought two thirds of five feet ten inches of ground from Thomas Sweeney, which the three converted into an alley to enable them thereby to go to Main street; and for this privilege the two brothers paid $200.00—$100.00 each; and that to reach the alley it was necessary for those living on the south half of No. 100 to pass over the north half, and this they have done from that time until about the time this suit was commenced, without any objection being made by the owner of the said north half.

John Neikof in his deposition says, that the brothers both told him, that they bought the alley-way, and both paid for it; that they bought it, and both had the right to use it, and nobody could fence them in any more. This they told him, shortly after they bought the alley-way. If the brother, who lived on the south half could not pass over the north half of the property, then he could not use the alley-way, which he had helped to purchase; and as the one living on the south half had for seven years passed over the north half to go to Main street without objection from his brother living on the north half, and at the end of that seven years the brothers together bought the alley-way and declared, that both had the right to use it, and one of them could not use it without passing over the lot of the other, it seems to me this would warrant the court in finding, as it did, that in the partition of the property it was agreed, that the brother occupying the north half should continue to permit the other to pass over his lot to go to Main street. From all the evidence and surrounding circumstances we can not say, that the finding of this fact by the court was wrong.

Where the decree sought to be reversed is based upon depositions, which are so conflicting and of such a doubtful and unsatisfactory character, that different minds and different judges might reasonably disagree as to the facts proved by them or the proper conclusion to be deduced therefrom, the appellate court will decline to reverse the decree, although the testimony may be such that the appellate court might have rendered a different decree if it had decided the cause in the first instance. *Smith* v. *Yoke*, 27 W. Va. 639; *Apple* v. *Ganong*, 47 Miss. 189; *Doonan* v. *Glynn*, 28 W. Va. 715; *Prichard* v. *Evans*, 31 W. Va. 141, 5 S. E. Rep. 461.

This cause comes within this rule, and we will not therefore reverse the decree. It is true, there was no evidence as to how wide the right of way should be, nor on what part of the lot it should be located. The court fixes its width at four feet and locates it at the end of the lot. The defendants cannot complain of this, because it is not to their prejudice, as it is better for them, that it should have a fixed location, and be on the end of the lot, and it should not be less than four feet. The decree of the Municipal Court is affirmed with costs.

AFFIRMED.