## CHARLESTON.

FITZGERALD *et al. v.* PHELPS & BIGELOW WINDMILL CO.

Submitted June 10, 1896—Decided Dec. 4, 1896.

1. MARRIED WOMAN—SEPARATE ESTATE—PERSONALTY—REALTY.
   In a suit in equity to subject the separate estate of a married woman to the payment of her debts, where it appears that she owns personal and real estate, and the personalty is more than sufficient to pay the indebtedness, the personalty should first be subjected before resorting to the realty.

2. EVIDENCE—CONFLICTING DEPOSITIONS—REVERSAL.
   Where the decree complained of is based upon depositions which are conflicting and contradictory in their character, so that it is difficult to determine on which side they preponderate, and hard to draw a proper conclusion therefrom, and different judges might reasonably disagree as to the facts proved, the appellate court will refuse to reverse the decree of the court below, although the testimony may be such that the appellate court might have rendered a different decree if it had acted upon the case in the first instance.

H. CLAY HYDE for appellants, cited Pars. Conts. (4th Ed.) § 386; 10 Am. & Eng. Enc. Law, 143, 144, 145; 95 Ind. 387; Benj. Sales (3d Am. Ed.) § 657; 56 Ind. 575; 27 Wis. 152; 31 Miss. 91; 1 Sprague, 404; 16 Ill. 69; 8 Blacf. 317; 11 Ohio St. 48; 21 N. Y. 552; L. R. 3 O. B. 197; 11 Ired. L. 166; 39 Mich. 557, 561; 67 N. Y. 304; 58 Cal. 234; 4 W. Va. 451; 7 W. Va. 571.

W. G. WORLEY, W. L. COLE and GEORGE E. PRICE for appellee, cited 39 W. Va. 544; 29 N. Y. 86; 18 W. Va. 586, 771; 35 Ill. 102; 85 Am. Dec. 347; 1 H. & M. 93, 372; 3 Lee, 567; 8 W. Va. 95; 27 W. Va. 555, 639; 28 W. Va. 715; 31 W. Va. 137, 566; 40 W. Va. 15; 35 W. Va. 720; 36 W. Va. 466; 9 Gratt. 302; 19 W. Va. 366; Acts 1893, c. 3, s. 15; Coke, Litt. 112a; 1 Black. Comm. 442; 21 W. Va.

658; 29 W. Va. 385; 38 W. Va. 404; 4 W. Va. 451; 7 W. Va. 571.

ENGLISH, JUDGE:

This was a bill in equity, filed in the Circuit Court of Preston county by the Phelps & Bigelow Windmill Company, a corporation, against Julia L. Fitzgerald, Nathan W. Fitzgerald, Sarah Wright, Gilmer S. Hamill, trustee, A. Hunter Boyd, trustee; William M. Baker, Jr., H. E. Baker, and H. J. Floyd (the three last named being partners under the firm name of Baker & Co.) and Wesley De Berry. It was, among other things, alleged that said Julia L. Fitzgerald was the wife of said Nathan W. Fitzgerald, and that she was the owner of a separate estate, situated in said county of Preston, and that the object of said bill was to charge her said separate estate with a debt alleged to be due from her to complainant. It was also alleged that said Julia L. Fitzgerald was indebted to the complainant in the sum of seven hundred and two dollars and eighty nine cents for certain improvements made by the plaintiff at her request to and upon her real estate, being a part of her separate estate aforesaid; and that said improvement consisted of a windmill, with tank, troughs, water pipes, and fittings, furnished and constructed by the complainant upon said land and premises of the said Julia L. Fitzgerald; and, being so indebted, she and her husband, the said Nathan W. Fitzgerald, afterwards, to wit, on the 15th day of April, 1890, made and delivered to plaintiff her two promissory notes, payable to the order of the plaintiff—one for three hundred and fifty dollars, payable on or before the 1st day of October, 1890; the other for three hundred and fifty two dollars and eighty nine cents, payable on or before July 1, 1890; both bearing interest from date—and that no part of said notes had ever been paid, although long since due, and often demanded; that said Julia L. Fitzgerald was at the time of contracting said debt, and still is, seised and possessed in her own right of a separate estate situated in said county of Preston, consisting of real and personal property, to wit, a tract of land, containing about three hundred and fifty one acres, also a tract con-

taining about eight acres, also a tract containing three hundred and ninety acres, less a tract of thirty four acres and five acres, which were conveyed away by her, and personal property consisting of horses, cattle, sheep, hogs,*etc.* farming utensils, and household furniture situated on said lands; that on the 15th day of September, 1889, the said Julia L. Fitzgerald and Nathan W. Fitzgerald conveyed said two tracts of land, excepting the thirty four acres and five acres, to the defendants Gilmer S. Hamill and Hunter A. Boyd, in trust to secure the payment of the sum of three thousand dollars to Sarah Wright three years after said date, with interest, payable semi-annually, at the rate of six *per cent.* per annum, with power to sell said real estate in default of the payment of the principal or any installment of the interest, when and as the same became due and payable, which trust deed was duly recorded in said county, a copy of which is exhibited; that there appears also on the land records of said county notice of the pendency of two suits in said court against said Julia L. Fitzgerald and her husband, the object of which, as stated in said notices, is to subject said real estate to the payment of certain alleged indebtedness of the said Julia L. Fitzgerald to the plaintiff in said suits. In one of said suits William H. Baker, Jr., H. E. Baker, and H. J. Floyd, partners under the firm name of Baker & Co. are plaintiffs, claiming an indebtedness of three hundred and five dollars and seventy three cents and in the other suit Wesley De Berry is plaintiff, claiming an indebtedness of one hundred dollars—copies of which notices are filed. Plaintiff further says that it is not informed whether default has been made in the payment of any or either of the interest installments upon the debt of three thousand dollars secured by the deed of trust, or whether the indebtedness claimed by the said Baker & Co. or the said De Berry has been paid in whole or in part, and, if unpaid, whether the same, or any part thereof, constitutes a legal charge upon the separate estate of the said Julia L. Fitzgerald; but upon information and belief the plaintiff says that, even if the separate estate of the said Julia L. Fitzgerald is liable for the full amount claimed by both Baker & Co. and De Berry, her personal estate afore-

said is of sufficient value to pay them, and leave a surplus. And the plaintiff prays that the said Sarah Wright may be required to answer whether any or either of the installments of interest is past due and unpaid, and, if so, how many, and the amount thereof; that the said Baker & Co. and De Berry may each be required to answer and fully disclose the nature and origin of their alleged claims against the said Julia L. Fitzgerald, and whether any part thereof has been paid, and what, if anything, is due them respectively; that the plaintiff may have a decree against the said Julia L. Fitzgerald and Nathan W. Fitzgerald for the amount of its debt, to wit, the sum of seven hundred and eighty nine dollars, with interest from the 15th day of April; 1890, and the costs of said suit; and that the same might be enforced against the personalty of the said Julia L. Fitzgerald by execution, and that the rents and profits of her said realty may, if necessary, be subjected to the payment of the said debt, interest, and costs.

The defendants Julia L. Fitzgerald and N. W. Fitzgerald filed their joint answer to said bill, in which they say: It is true that plaintiff erected a certain windmill with tank, trough, water pipes, and fittings on the land of said Julia L. Fitzgerald at a cost of several hundred dollars; that the plaintiff was paid on said work about four hundred dollars in cash; and that defendants for the remainder of the price of said windmill, executed their two promissory notes for the sums of three hundred and fifty two dollars and eighty nine cents and three hundred and fifty dollars, respectively, payable to the order of said windmill company; but they deny that they, or either of them, owe the plaintiff the sum of seven hundred and two dollars and eighty nine cents for certain improvements as alleged in the plaintiff's bill of complaint, for the following reasons, to wit: The said windmill company was to erect a windmill, with tank, *etc.* for a certain sum of money; that in consideration thereof the said mill was to be a good piece of machinery, to be properly and well built, and to be kept in good order and thorough repair by said company for one year, the same being warranted by said company for the period of one year; and they allege that said windmill was not properly con-

structed, and that before the expiration of six months from the time it was built it was out of working order, and became utterly useless, and in fact dangerous, that the said company was notified of the said condition of said windmill, and neglected and refused to repair the same and keep the same in good order for one year as they promised to do, and that since that time the said windmill has been of no use whatever to defendants; that from the beginning it never worked satisfactorily; that said windmill was erected by said company to a height of one hundred feet or more, which was much higher than necessary, which was remonstrated against by the defendants at the time, but that said company, by its agent, said it "knew what it was doing, that they wanted to build it high enough to be seen all over the county, and that the job was being done as an advertisement for the company." The result was that the said windmill was built too high to be of any utility or practical use whatever; that no one but a practical windmill climber can go up to the machinery to oil it, which should be done twice a week; that defendants objected to the great height at which said windmill was being built, but the said company by its agent, induced defendants to believe that it was all right, as they (the defendants) were experienced in such business, but they have since learned that the windmill was built much too high to be of any practical use in that windy climate; that said windmill company knew that they were not properly erecting said windmill, and that they intentionally defrauded the defendants; that the plaintiff has received from the defendant Julia L. Fitzgerald the sum of four hundred dollars for said defective and worthless windmill, and that no benefit or value whatever has been realized by her in consideration of said sum of money; that the said company did not comply with its contract—that is, to keep said windmill in good working order for the period of one year immediately following its erection; that the windmill which it erected has always been utterly useless and valueless; that no consideration has been received by defendants, or either of them, for the four hundred dollars expended as aforesaid; that the de-

fendants were cheated and defrauded by said company; that they do not, in equity and good conscience, owe the plaintiff anything, but, on the contrary, the said company · owes the defendant Julia L Fitzgerald the sum of four hundred dollars received by it as aforesaid; that defendants should be relieved from the payment of said two notes, and the plaintiff required to refund to the defendant Julia L. Fitzgerald the sum of money received as aforesaid.

The plaintiff filed a special replication, denying that the sum of four hundred dollars was paid to it by said defendants, or either of them, for or on account of the erection of said windmill, or that it warranted the said windmill for the period of one year, or that it agreed to keep it in good order and thorough repair, as alleged in said answer; but admits that it did agree that, in case any part of the said windmill should break during one year after its construction, to furnish said part free of cost, and alleges that said mill was properly erected and constructed according to the contract made by the complainant with the said Julia L. Fitzgerald; and it denies that before the expiration of six months, or at any time since the completion of said mill, it was through any fault of the complainant out of working order, or that it became or is useless or dangerous, or that it refused to make repairs upon said mill, or that it has failed to do or perform anything that its contract required to be done; and it denies that said mill never worked satisfactorily, or that it was erected to the height of one hundred feet (the height being only seventy five feet, which is a reasonable and proper one for the purposes and uses required by the defendants) that it was built at this height by request and direction of defendants, who informed the plaintiff that they desired the mill to supply not only the buildings then upon the farm of the said Julia L. Fitzgerald, but a new and fine mansion which she contemplated soon to erect thereon; and plaintiff alleged that said mill is none too high either to supply water to the present buildings or any other use to which a windmill may be properly put; and the plaintiff sets forth the terms of the written contract between it and defendants, which contract it alleges is in its possession, and will be produced at the hear-

ing of the case, when required by the court. And the plaintiff further says that several months after the completion of said windmill, and after the defendants thoroughly tested it, they expressed themselves as entirely satisfied and very much pleased with it; that they executed their notes for the contract price, and never made the slightest complaint of the said windmill until long after the notes were past due, and demand for payment was made, and then repeatedly promised to pay the notes; at first making no complaint of the work done by the complainant, and not until pressed, and suit threatened, did they ever intimate any dissatisfaction whatever with the work. The defendants filed a speccial rejoinder, putting in issue the affirmative matters set forth in said special replication.

A large number of depositions were taken, both by plaintiff and defendants, which are very conflicting; those taken by the plaintiff occupying seventy three pages of the printed record, and those taken by the defendants one hundred and twenty three pages of the same. The cause was heard on the 3d day of April, 1894, and the court found in its decree that the plaintiff had a debt against the defendants Julia L. Fitzgerald and N. W. Fitzgerald, and each of them, for the amount of principal and interest of the two notes set up in plaintiff's bill and exhibited to the court, and that the plaintiff was entitled to enforce the collection thereof against the said real estate owned by the defendant Julia L. Fitzgerald, described in plaintiff's bill, and finding the said N. W. Fitzgerald was insolvent, no decree was rendered against him; ascertained the amount due on said notes on the 3d day of April, 1894, to be eight hundred and seventy dollars and twenty five cents; and directed that unless said sum, with interest from that date, and costs of the suit, were paid within thirty days from that date, a special commissioner therein appointed should rent the said real estate of Julia L. Fitzgerald for sufficient time to raise a fund sufficient to pay said debt and costs, after advertising the same as therein prescribed, and upon the terms and conditions therein set forth; and this appeal was obtained from that decree.

The first assignment of error is that "the court erred in

decreeing from the pleadings and proofs that the plaintiff has a debt against the defendants Julia L. and N. W. Fitzgerald, and each of them, for the amount of principal and interest of the two notes as set up in plaintiff's bill and exhibited to the court as Exhibits C and D thereof, because the proofs warrant no such a conclusion, nor do the pleadings." In order to reach a proper conclusion on this assignment of error, it would be necessary to enter into a strict analysis of the entire mass of conflicting testimony which is found in the record of this case; and how it was reconciled by the learned judge who presided at the trial it is extremely difficult to determine. Where evidence is conflicting, as in this case, this Court has held, in the case of *Nease* v. *Capehart*, 8 W. Va. 95, that "when the evidence in behalf of a plaintiff in equity is sufficient to establish his claim, but the counter evidence adduced by the defendant impeaches and contradicts it, and there is such conflict that the court can not decide the question of fact satisfactorily, it directs an issue." Hoffman, Judge, in delivering the opinion of the Court in that case, said: "In the case in judgment the evidence in behalf of the plaintiffs is sufficient to establish the trust, but the counter evidence adduced by the defendant, in whole or in part, impeaches and contradicts it. Thus the evidence so conflicts as to make it impossible for the court to decide the question of fact satisfactorily, and so constitutes a case especially appropriate for the consideration of a jury that may see the witnesses and hear them thoroughly examined." By reference to the bill, however, it is perceived that the plaintiff alleges that on the 15th day of September, 1889, the defendants Julia L. Fitzgerald and N. W. Fitzgerald executed a deed of trust on said real estate to secure the payment of the sum of three thousand dollars to Sarah Wright, with interest, payable semi-annually, at the rate of six *per centum* per annum, with power to sell said real estate in default of the payment of the principal or any installment of the interest when and as the same may become due and payable; and that there was also on the land records of said county notice of the pendency of two suits in said court against the said Julia L. Fitzgerald and

her husband, the object of which was to subject said real estate to the payment of certain indebtedness, in one of which Baker & Co. claimed three hundred and five dollars and seventy three cents, and in the other Wesley De Berry claimed one hundred dollars; and the plaintiff alleges that he was uninformed as to what amount, if any, had been paid upon said claims, or what portion thereof constitutes a legal charge upon said real estate; and the plaintiff alleges that the personal estate of defendant Julia L. Fitzgerald is sufficient to pay his claim and leave a surplus, and this allegation is undenied in the answer. This being the case, before decreeing the rental of the real estate of the defendant Julia L. Fitzgerald, the cause should have been referred to a commissioner to ascertain and report what amount of money, if anything, was due from the said Julia L. Fitzgerald by reason of the contract alleged in the bill; also the amount and character of the liens existing against said real estate; and, as the decree complained of was rendered on the 3d day of April, 1891, subsequent to the act of 1891, if it be ascertained that the personal property of said Julia L. Fitzgerald was more than sufficient to pay the debt ascertained against her, and there is no prior lien upon said personal property, said plaintiff should be compelled to resort first to said personalty for the satisfaction of said indebtedness, and to exhaust the same before going upon the realty; since by the act of our legislature approved February 16, 1893, an execution may issue on a judgment against a married woman, and be collected against the separate personal property of such married woman as though she were a *feme sole.* See section 15, chapter 3, Acts 1893.

It is true that at the time this suit was commenced there was no statute authorizing a common-law execution against the personal estate of a married woman, but the act above referred to was passed before this decree was rendered; and Wade, Retro. Laws, § 221, says: "The remedies which the law supplies for the enforcement of civil obligation may attach to those already in existence as well as those of the future. The power of the legislature is not exhausted by providing remedies for future contracts. A special remedy may be withdrawn by the legislature

without impairing the obligation of existing contracts.    So existing rights may be enforced by additional remedies, provided subsequent to the acquisition of such rights"— citing *Vanzant* v. *Waddel*, 2 Yerg. 260; *Commercial Bank of Natchez* v. *State*, 6 Smedes & M. 599; *Christie* v. *De Friest*, 27 Barb. 104; and numerous other authorities.    In the case of *Phinney* v. *Phinney*, 81 Me. 450 (16 Atl. 405) it was held that "the laws existing at the time and place of making the contract and where it is to be performed enter into and form a part of it, as if they were expressly referred to or incorporated in its terms, embracing not only those laws which affect its validity, construction, and discharge, but also those in relation to its enforcement." But it can not be said that the obligation of a contract is impaired by giving an additional remedy for its enforcement.    As the law existed at the time the alleged contract in the bill mentioned was made, she might have been proceeded against by suit in equity, and her real estate rented for the purpose of satisfying the same, and her personal estate subjected to the payment of her debts; and the recent statute only authorizes an additional remedy by providing that her separate personal property may be sold under execution.

My conclusion, therefore, is that the court erred in not referring this cause to a commissioner for the purpose of ascertaining the amount of indebtedness, if any, which existed against the defendant Julia L. Fitzgerald, instead of attempting to ascertain the amount from the conflicting testimony in the case; and also to ascertain the amount and character of the personal estate owned by said Julia L. Fitzgerald as her separate estate, and the liens existing against the same and their priorities, and for these reasons the cause is reversed and remanded, with costs.

ON REHEARING.—(Dec. 16, 1896.)

After hearing the argument of counsel in this case, and considering the briefs and the authorities therein cited, I am satisfied that the case in not controlled by the case of *Nease* v. *Capehart*, 8 W. Va. 95, as to directing an issue or referring the case to a commissioner, but that it is ruled by

subsequent decisions of this Court to which my attention was not called and which were overlooked at the time the opinion was prepared, which hold that: "Where the decree complained of is based upon depositions which are conflicting and contradictory in their character, so that it is difficult to determine on which side they preponderate, and hard to draw a proper conclusion therefrom, and different judges might reasonably disagree as to the facts proved, the appellate court will refuse to reverse the decree of the court below, although the testimony may be such that the appellate court might have rendered a different decree if it had acted upon the case in the first instance." This was the syllabus in the case of *Smith* v. *Yoke*, 27 W. Va. 639, and the decision has been repeated, and the same syllabus used by this Court in the following cases: *Doonan* v. *Glynn*, 28 W. Va. 715; *Prichard* v. *Evans*, 31 W. Va. 137 (5 S. E. 461); *Frederick* v. *Frederick*, 31 W. Va. 566 (8 S. E. 295); *Richardson* v. *Ralphsnyder*, 40 W. Va. 15 (20 S. E. 854); *Bartlett* v. *Cleavenger*, 35 W. Va. 720 (14 S. E. 273); and *Dorr* v. *Dewing*, 36 W. Va. 466 (15 S. E. 93). In the last named case it was also held that, after a chancery cause has been heard, and a decree pronounced in the court below, without an order of reference in any wise suggested or asked by the appellant, he can not for the first time in the appellate court assign such hearing without such order as error, unless it appears from the record that manifest injustice has been done him thereby, or that it was the duty of the court of its own motion, if necessary, to send the case to a commissioner for a final hearing. In the opinion of the Court in that case, JUDGE HOLT, who delivered the opinion of the Court, says: "That there was not a reference to a commissioner is assigned as error in the petition, but it is not mentioned or relied on in argument. In a case like this, if the parties could have agreed upon some commissioner acceptable to both, such reference would certainly have facilitated the examination of the questions of fact; but no reference was asked in any pleading or by motion. Both parties took their proofs, and submitted the cause to the court for final decision. The court, of its own motion, in order to lighten its own labors, might have well said

this mass of conflicting evidence must first go to a commissioner, but for some good reason the court saw fit to go through the whole labor itself, and it comes too late for the party, after he has lost his case, to move for the first time, and in the appellate court, that the cause be sent to a commissioner." Now, in the case we are considering the court has seen proper, without any decree of reference being asked or directed, to take upon itself the labor of analyzing the entire mass of conflicting and contradictory testimony in this case, and has found that the defendants are indebted to the plaintiff in the sum of eight hundred and seventy dollars and twenty five cents, and decreed against the female defendant that, unless she pays that sum within a time specified, her real estate mentioned in the bill be rented out by a special commissioner therein appointed.

The decree is silent as to her personal estate, when it is alleged by the plaintiff in its bill that the personal estate of the defendant Julia L. Fitzgerald is of sufficient value to pay the indebtedness claimed and leave a surplus, which allegation is not denied in the answer, and must be considered as a conceded fact. Yet the decree directs that, unless the defendant Julia L. Fitzgerald (or some one for her) do pay the said plaintiff the sum of eight hundred and seventy dollars and twenty five cents, with interest from the date of the decree, within thirty days, the real estate of the said female defendant be rented out by a commissioner on the terms therein specified. I have seen no cause to change the opinion expressed as to this action of the court. It being conceded that the personal estate of the female defendant was ample to pay off and satisfy the amount claimed in the bill, said personal estate should have been first subjected before renting the real estate. The reason for this law arises from the character of the property. The real estate, as a general thing, constitutes the home of the family, while personal property can more readily be spared without causing distress. In the case of *Radford* v. *Carwile*, this Court, speaking of the liability of the separate estate of a married woman (13 W. Va. 572, fifth point of syllabus) held: "But those incidents—liability to the payment of her debts and her *jus disponendi*—extend no

further than to all her seperate personal property, and the rents and profits of her separate real estate accruing during the continuance of the coverture." And why, in this instance, the court saw proper to disregard the personal property and decree alone against the real property, is something that surely needs explanation. So in the case of *Phillips* v. *Graves*, 20 Ohio St. 371, that court held that: "A married woman, possessed of a separate estate in real and personal property, may charge the same with her debts, at least to the extent that such debts may be incurred for the benefit of her separate estate, or for her own benefit, upon the credit of her separate property." Also that: "Courts of equity will enforce the payment of such charges against her separate estate through a receiver (1) by appropriating the personal property, (2) by sequestering the rents and profits of the realty, and (3) by sale of the realty when the same is necessary." In this state, however, the *corpus* of the real estate could not be sold to satisfy the indebtedness of such married woman until the act of February 16, 1893, was passed, which was prior to the decree in this case, but the law, I think, is properly stated as to the order in which said real estate and personalty will be subjected to the payment of her debts.

The decree complained of must be reversed so far as it directs the rental of the female defendant's real estate without first exhausting the personalty, and the cause is reversed and remanded for further proceedings to be had therein, with costs, *etc.*