# CHARLESTON

## MARTIN v. CLARK.

Submitted March 16, 1915. Decided April 6, 1915.

1. PARTITION—*Parol Partition—Validity—Joint Tenants.*

   A parol partition of land between joint tenants, however clearly the terms thereof may be established, is not valid and binding, unless completely executed by the taking of possession, in severalty, of the different parcels. (p. 116).

76 W. Va.

2.  SAME—*Parol Partition—Perfecting by Possession—Sufficiency of Evidence.*

A case in which it is held the facts proven are not sufficient to establish possession in severalty.  (p. 117).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Raleigh County.

Suit by J. W. Martin and others against L. H. Clark and others.  From a decree for defendants, plaintiffs appeal.

*Reversed and remanded.*

*J. E. Summerfield* and *Painter & Shrewsbury,* and *Brown, Jackson & Knight,* for appellants.

*McCreery & Patterson,* for appellees.

WILLIAMS, JUDGE:

Eva M. Tolley and her sister, Virginia B. Tolley, were joint tenants of the surface of two tracts of land devised to them by their parents, C. E. Tolley and Paulina Tolley, who had also been joint tenants.  C. E. Tolley devised the whole of the two tracts to his wife for life, with remainder to his two daughters aforesaid, as if he were the sole owner, and died in 1896.  His wife later made a will, acquiescing in the will of her husband, and devised the land to the two daughters in fee, and died in 1907.  One tract is denominated in the record the "Home place", and the other the "Jeff Trump Tract".  Virginia B. Tolley married L. H. Clark, and Eva M. Tolley, some years later, married J. W. Martin.  We will hereafter refer to them as Mrs. Clark and Mrs. Martin.  Mrs. Martin and her husband brought this suit against Mrs. Clark and her husband for partition of the two tracts of land.  The defense to the bill, as to the Home Place, is, that the two sisters had made parol partition of it.  The court held that partition to be binding, and decreed that each party execute a deed to the other, in conjunction with her husband, releasing and conveying her interest to the other, according to the dividing line they had made.  This gave to Mrs. Clark Lot No. 1, containing 36.85 acres, and to Mrs. Martin Lot No. 2, containing 53.25 acres; and Mrs. Martin appealed.

The courts of the various states are not in harmony on this

question, but, whatever may be the rule in other jurisdictions, the right of joint tenants, to make a valid parol partition is now too well established; in this state, by the decisions of this court, to admit of question. *Frederick* v. *Frederick,* 31 W. Va. 566, 8 S. E. 295; *Patterson* v. *Martin,* 33 W. Va. 494, 10 S. E. 817; and *Justice* v. *Lawson,* 46 W. Va. 163. The Virginia courts were also inclined to this rule, at least in relation to coparceners, until the legislature of that state enacted a statute requiring partition to be by deed. *Coles* v. *Wooding,* 2 P. & H. 189; *Bolling* v. *Teel et al.,* 76 Va. 487; and Code of Virginia, (1904), Sec. 2413. But, in order that a parol partition shall be binding, the agreement must not only be clearly and distinctly proven, but it must also have been completely executed by a taking of possession of the respective parcels, in severalty. However, possession for a time, sufficiently long to bar an action, is not required.

Upon a careful review of the evidence in this case, we are clearly of opinion that an oral agreement to make partition, the location of the dividing line, and the parcel each party was to get, are all sufficiently established. But we are equally clear that no possession in severalty has been proven. At the time of the alleged partition, to-wit, April 1908, Mrs. Clark was married, and living in the only dwelling house on the Home Place. Mrs. Martin was then single and lived with her, as one of the family, and assisted in the work about the house and garden, apparently without compensation other than her board. She married in September 1912, and thereafter both families continued to occupy the house, each having separate apartments, and they were thus living when this suit was brought. The house is on Lot No. 1, which, the answer avers, fell to Mrs. Clark after Mrs. Martin had been given her choice and had selected Lot No. 2.

Both parties appear to have been anxious to divide the land. W. P. Tolley, a brother, testified that Mrs. Martin requested him to get a surveyor and have him divide the land; that he did get George F. Wilson, the county surveyor, and had him run a line dividing the land into two parcels; that his two sisters were present when it was run, and that Eva M., (now Mrs. Martin), was given her choice and took the lower end of the farm, or Lot No. 2. Mrs. Martin does

not deny the facts testified to by her brother, but says she simply remarked that she would take the lower end of the farm, to see if they would do her justice in making the division. It also appears that each party paid half the expenses of the surveying. Counsel insist that Mrs. Martin was perfectly contented with the division until after she married, and that her husband thereafter caused her to become dissatisfied, by inducing her to believe Mrs. Clark had gotten the more valuable portion of the land. But, whether she was at first satisfied or not is not material, if possession, in severalty, of the respective parcels, was not substituted for the previous joint possession of the whole. Nothing short of that would defeat her right to partition in equity. No fence was ever built on the division line, and very little improvement has since been made on Lot No. 1, and none on Lot No. 2, except the rebuilding of an outside line fence between it and Ash Mankins, for which Mrs. Martin paid one-half the cost of so much as extended along Lot No. 2, and Mrs. Clark one-half of so much as bounded on Lot No. 1. Both owned cattle individually, and continued to permit them to graze over the pasture lands, on both sides of the line, as they had done before, no attempt being made to confine them on either parcel of land. Mr. Clark raised two crops of corn on parts of Lot No. 2, free of rent. No separate accounts appear to have been kept between the parties, respecting the proceeds derived from the land. Mrs. Martin had the hay cut from Lot No. 2, in 1912 and 1913, for the reason, as she says, she was entitled to some of the crops from the farm, and had not been getting any. Mr. Richard Snuffer testified that he cut the grass those years on Lot No. 2, at Mrs. Martin's request; that for the year 1912 he received a part of the crop, and for the year 1913 Mr. Martin paid him the money; and that, in 1913, he cut the grass on both sides of the line which, he says, was shown him by Mr. Clark as the division line, and that he did it at the request of Mr. Martin. Mr. Clark testified that he cut the grass on Lot No. 2, for every year after the line was run, until 1912, except one, when the meadow overflowed. It does not appear that he did so pursuant to any agreement with his sister-in-law. Presumably, he cut it and the cattle consumed it, just as the custom of

the parties was, before the attempted partition. He also admitted that he pastured his cattle on the meadows, in the fall, after the grass was cut.

So far as the record disclosed, there was little change, if any, in the character of the possession after the running of the line. The parties appear to have continued to use the whole of the land in common, and actually occupied the same dwelling house, without either paying rent to the other. These facts are certainly not sufficient to prove possession in severalty.

Mr. Clark testified that after the division line was run, he built fences on Lot No. 1, shedded the barn on three sides, planted an orchard and put palings around the garden, the value of which improvements he estimates at $500. But he admits that part of the lumber used in making them came from other lands, jointly owned by the two sisters. The evidence is conflicting as to the relative value of the two parcels. W. P. Tolley thinks they are about equal in value. But plaintiff and her nephew, Luther Cole, both think Lot No. 1 is worth $2,000 more than Lot No. 2. Richard Snuffer values Lot No. 1 $1,000 more than Lot No. 2; and J. E. Callaway, who lives near the land and has known it for thirty-two years, says it was worth $500 more, in 1908, when the line was run. But the comparative value of the two parcels is not material to a determination of whether a parol partition was actually completed, or not, and we simply refer to this evidence, as tending to show plaintiff's good faith in refusing to abide by the parol agreement.

Lot No. 1 also appears to lie between Lot No. 2 and the public road, making an easement over Lot No. 1 necessary to the enjoyment of Lot No. 2. No provision is shown to have been made, either by the parties themselves in their oral agreement, or by the court's decree appealed from, for such right of way. It would seem to be indispensable.

Further complaint is made of the decree, because it failed to make partition of the Trump Tract. No objection was raised by the answer to a partition of that tract. The decree only dealt with the Home Place, and disposed of the issues raised by the answer. It did not dismiss plaintiff's bill, and, hence, the suit is still pending for a partition of the Trump

Tract.   The failure to make partition of it is not error, for which the decree should be reversed.   It is a matter yet to be acted on by the lower court.

For the reasons herein stated the decree is reversed and the cause remanded.

*Reversed and remanded.*